Robert V. CONNELLY, et al.,
Plaintiffs,

v.

Constance NEWMAN, et al.,
Defendants.

No. C–88–5085 DLJ.

United States District Court,
N.D. California.

March 15, 1990.

Laurence Pulgram and Richard Marcantonio, with the law firm of Howard, Rice, Nemerovski, Canady, Robertson & Falk, San Francisco, Cal., for plaintiffs.

Mary Magee, with the U.S. Dept. of Justice, Washington, D.C., for defendants.

## ORDER

JENSEN, District Judge.

On February 28, 1990, this Court heard plaintiffs' and defendants' cross-motions for summary judgment. Laurence Pulgram and Richard Marcantonio appeared for plaintiffs. Mary Magee appeared for defendants. For all the following reasons, the Court grants summary judgment to plaintiffs on the issue of post-accident testing, and permanently enjoins such testing by defendants. In addition, the Court grants partial summary judgment to defendant on the issue of reasonable suspicion testing. Defendants' motion for summary judgment as to post-accident testing, and plaintiffs' motion for summary judgment as to reasonable suspicion testing, are both denied.

## I. BACKGROUND FACTS

This is an action brought by certain government employees against the United States Office of Personnel Management ("OPM") challenging a recently implemented drug-testing plan. Plaintiffs contend that the OPM drug-testing plan violates the employees' rights under the Fourth Amendment by subjecting employees to unlawful searches and seizures.

As the successor agency to the Civil Service Commission, the Office of Personnel Management is responsible for developing, implementing and overseeing federal personnel policies. OPM implemented its Drug–Free Workplace Plan ("the Plan") in September 1988, in response to Executive Order No. 12,564. 51 Fed.Reg. 32,889 (1986). This Order charges each executive agency to develop drug-testing programs

that include post-accident and reasonable suspicion testing. The OPM Plan tests urine samples for the presence of five drugs: marijuana, cocaine, opiates, amphetamines, and phencyclidine (PCP).

Plaintiff class consists of some 5800 OPM employees, all of whom are potentially subject to post-accident and reasonable suspicion drug testing under the OPM Plan. Procedures for collection and testing of urine samples are governed by the Department of Health and Human Services Guidelines ("HHS Guidelines"), 53 Fed. Reg. 11970 (1988), as described previously by this Court. *See* Order of June 15, 1989 at 3–4.

In its order of June 15, 1989, the Court addressed three aspects of the OPM Plan: (1) random testing of all OPM employees at the investigator level or higher; (2) post-accident or unsafe practices testing whenever an injury results from an on-duty accident that requires hospitalization or causes property damage over $1000; and (3) reasonable suspicion testing. The Court preliminarily enjoined the random and post-accident drug testing portions of the OPM Plan, while allowing reasonable suspicion testing under the Plan to proceed before trial.

The parties finalized the Court's injunction on random testing by stipulation. Plaintiffs now move for summary judgment, pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, regarding the two types of drug testing still at issue.

## II. APPLICABLE LEGAL STANDARD

In considering the constitutionality of drug-testing programs for government employees, the Court does not write on a blank slate. Rather, the Court is guided by two recent Supreme Court decisions, *National Treasury Employees Union v. Von Raab*, 489 U.S. 656, 109 S.Ct. 1384, 103 L.Ed.2d 685 (1989), and *Skinner v. Railway Labor Executives Ass'n*, 489 U.S. 602, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989).

█ Drug testing by the federal government of its employees is a search under the Fourth Amendment and therefore must meet the requirement of reasonableness. *Skinner*, 109 S.Ct. at 1413. Although there is a reduced expectation of privacy for federal employees at the workplace, these individuals do not forfeit their Fourth Amendment rights "merely because they work for the government instead of a private employer." *O'Connor v. Ortega*, 480 U.S. 709, 107 S.Ct. 1492, 1498, 94 L.Ed.2d 714 (1987).

█ The warrant requirement generally applicable to searches and seizures under the Fourth Amendment does not necessarily apply to drug testing of federal employees. *Skinner* and *Von Raab* suggest that a different legal standard applies to searches performed in non-law enforcement contexts. Because drug testing of federal employees represents one such context, courts must consider whether "special governmental needs" beyond normal law enforcement justify departure from the usual warrant and probable-cause requirements. *Von Raab*, 109 S.Ct. at 1390–91; *Skinner*, 109 S.Ct. at 1414. If such special needs exist, courts consider all of the circumstances of the drug testing program at issue, balancing the individual's privacy expectations against the government's interests. *Id.* In evaluating whether a particular drug testing program is reasonable under the Fourth Amendment, a requirement of individualized suspicion, although relevant, does not present a constitutional floor below which a search must be presumed unreasonable. *Skinner*, 109 S.Ct. at 1417. *See also Von Raab*, 109 S.Ct. at 1392.

## III. POST–ACCIDENT TESTING

█ The OPM Plan authorizes testing of employees involved in accidents or unsafe practices which result in (1) death or personal injury requiring immediate hospitalization, or (2) property damage in excess of $1,000. The Plan does not require individualized suspicion of drug use before subjecting an employee to post-accident testing.

OPM's interest in determining the cause of accidents and otherwise ensuring the safety of its employees constitutes a "special need" which justifies conducting post-

accident testing in the absence of a warrant or probable cause. *See Von Raab*, 109 S.Ct. at 1390–91; *Skinner*, 109 S.Ct. at 1414. This Court must therefore balance OPM's interest in post-accident testing and the employees' reasonable expectation of privacy. In *Skinner*, the Supreme Court applied this balancing test so as to uphold the constitutionality of suspicionless post-accident drug testing in the railroad industry. The reasonable expectation of privacy of OPM employees is comparable to that of railroad employees who work in an industry subject to heavy government regulation. *See id.* at 1418. Consequently, the Court focuses its analysis on the other side of the equation, that of the government's interest in post-accident testing of OPM employees.

The OPM employees subject to the urinalysis program at issue here are primarily civil service office workers. They do not normally perform hazardous duties, although many OPM employees drive government vehicles in the course of their employment. The post-accident testing portion of the OPM Plan thus pertains mostly to automobile accidents. OPM contends that its employees have been involved in 87 traffic accidents in the past five years, at an annual cost to OPM of approximately $25,000. The cited evidence establishes that drug use did not play a role in any of these accidents.

Based on these facts, the Court finds that the government has presented only a minimal interest in post-accident testing of OPM employees. In *Skinner*, the problem of drug and alcohol-related train accidents presented a real and present danger. Over an eleven year span, drug and alcohol abuse contributed to 21 major train accidents, causing 25 fatalities and an estimated $19 million in property damage. *Id.* at 1407–08. Moreover, a nexus existed between toxicological testing and the protection of the public, based on the Supreme Court's finding that railroad employees "discharge duties fraught with such risks of injury to others that even a momentary lapse of attention can have disastrous consequences." *Id.* at 1419. The regulations in *Skinner* also set a relatively high threshold for post-accident testing, requiring injury or damage to railway property of at least $50,000. Given these circumstances, the Supreme Court held that the government interest in testing railroad employees was compelling. *Id.*

The interests supporting OPM's drug testing plan are weak in comparison to those in *Skinner*. In contrast to the railroad industry, the record before the Court suggests no history of drug abuse among OPM employees. Although not dispositive, the absence of a historical drug problem is a factor that diminishes the government's interest in subjecting OPM employees to drug testing. OPM also seeks to subject to urinalysis all employees involved in automobile accidents that result in $1000 of total property damage. The OPM Plan thus applies more broadly and is more intrusive of its employees' expectations of privacy than was true in *Skinner*, because the $1000 threshold for testing is so much lower.

The government argues that the Fourth Amendment merely requires the occurrence of an accident to justify drug testing of OPM employees. Under this standard, the government could subject an OPM employee to drug testing based solely on a minor automobile collision, even if that collision occurred while the employee's vehicle was parked in the OPM parking lot. The Court rejects this view. Government employees are not defenseless in the face of drug testing programs. Instead, the Fourth Amendment requires of post-accident testing that, at a minimum, accidents meet some threshold level of severity (measured in terms of actual personal injury or property damage suffered, or the level of harm at risk) and that the testing covers only employees that may have caused the accident.

The OPM Plan presently at issue requires only $1000 in property damage and does not contain a causation requirement. In these respects the Plan is unlike post-accident testing programs enacted by other government agencies that have survived judicial scrutiny. For example, under the Department of Agriculture's post-accident

testing program, employees are tested when, while on the job, they apparently cause one or more fatalities, the hospitalization of one or more persons, or damage to property in excess of $10,000. *See Nat'l Treasury Employees Union v. Yeutter,* 733 F.Supp. 403, 406 (D.D.C.1990). The Department of Agriculture thus has a greater interest than OPM in implementing its post-accident testing program, and the testing is also less intrusive of its employees' expectations of privacy.[1]

In the final analysis, post-accident testing under the OPM Plan fails to satisfy constitutional standards for two related reasons. First, OPM employees do not pose a sufficient threat to public safety. They merely drive government vehicles on public roads. Their mistakes, whether drug-related or otherwise, do not have catastrophic consequences in terms of human loss, property damage, or environmental damage. In this manner OPM employees are unlike nuclear power plant workers, air traffic controllers, railroad workers, and oil tanker crews. Second, the OPM Plan implicitly recognizes the nonhazardous job responsibilities of its employees by setting an unreasonably low threshold for post-accident testing and dispensing with a causation requirement altogether. These provisions not only diminish OPM's interest in post-accident drug testing, but also significantly compromise its employees' privacy expectations.

OPM has failed to demonstrate a nexus between post-accident drug testing of its employees, as authorized by the particular provisions of its Plan, and protection of public safety. The Court therefore finds that the government's interest in post-accident testing does not outweigh plaintiffs' reasonable expectations of privacy. Pursuant to this finding, the Court GRANTS summary judgment to plaintiffs on the post-accident testing portion of the OPM Plan.

---

1. OPM also contends that it has a compelling interest in preventing a drug abuse problem from developing among its employees. Although the Court must consider this as a factor,

## IV. REASONABLE SUSPICION TESTING

The second portion of the OPM Plan presently at issue authorizes urinalysis testing where there is individualized suspicion of illegal drug use. Drug testing is permitted based on any of the following five criteria: (1) observable phenomena, such as direct observation of drug use or possession and/or the physical symptoms of being under the influence of a drug; (2) a pattern of abnormal conduct or erratic behavior; (3) arrest or conviction for a drug-related offense, or the identification of an employee as the focus of a criminal investigation into illegal drug possession, use, or trafficking; (4) information provided either by reliable and credible sources or independently corroborated; or (5) newly discovered evidence that the employee has tampered with a previous drug test. OPM Plan, § 4–10(A). Once a supervisor has determined that reasonable suspicion exists to conduct a urinalysis, his or her written report supporting the recommendation for testing must be approved by two additional levels of OPM management. Only after the supervisor's recommendation survives this review process is the employee required to submit to testing. *Id.*

■ The threshold issue before the Court is whether or not reasonable suspicion testing under the OPM Plan is supported by a "special governmental need." *See Von Raab,* 109 S.Ct. at 1390–91; *Skinner,* 109 S.Ct. at 1414. Plaintiffs urge this Court to apply a probable cause standard to the reasonable suspicion testing portion of the OPM Plan. The Court, however, is guided by *Von Raab,* which permitted *suspicionless* testing of Customs Service employees to ensure that drug users were not promoted to sensitive positions. 109 S.Ct. at 1390. The Supreme Court departed from the probable cause requirement in *Von Raab* on grounds that probable cause "is peculiarly related to criminal investigations," and therefore "may be unhelpful in analyzing the reasonableness of routine ad-

deterrence of drug use, without more, does not create a compelling interest. *See Skinner,* 109 S.Ct. at 1422 (Stevens, J., concurring).

ministrative functions." 109 S.Ct. at 1391 (citations omitted).

The OPM Plan is plainly not designed to serve the ordinary needs of law enforcement, but rather seeks to deter and detect drug impairment of its employees in the workplace. Test results are confidential and may not be used for criminal prosecutions. Like other employers, the government has an interest in the efficiency and productivity of its employees. Improving efficiency and productivity through drug-testing programs constitutes an administrative function within the meaning of *Von Raab*. Moreover, section 4–10(A) of the OPM Plan authorizes drug testing only for those employees on whom individualized suspicion has focused, which is a feature absent from the Customs Service procedure approved of in *Von Raab*. For all of these reasons, the Court finds that OPM has established a "special governmental need" as required by *Von Raab* and *Skinner*.

■■■ Given its finding of a special governmental need, the Court proceeds to consider all of the circumstances of the drug-testing program at issue, balancing the individual's privacy expectations against the government's interest. *See Von Raab*, 109 S.Ct. at 1390–91; *Skinner*, 109 S.Ct. at 1414.

In screening applicants for civil service positions, OPM plainly performs an important governmental function. OPM has a strong interest in ensuring that its employees are not impaired by illegal drugs. Plaintiffs contend, however, that OPM does not have a strong interest in its employees' off-duty impairment. Because the OPM Plan subjects employees to reasonable suspicion drug testing based on their off-duty conduct, plaintiffs argue that the drug-testing program is unreasonable under the Fourth Amendment.

The Court is of the opinion that the inclusion of off-duty conduct within the criteria of § 4–10(A) is not a fatal defect of reasonable suspicion testing under the OPM Plan. Where drug testing serves a special governmental need, as here, an employee's off-duty conduct can raise a sufficient risk of on-duty impairment to justify drug testing

under the Fourth Amendment. *Accord, American Fed'n of Gov't Employees v. Cavazos*, 721 F.Supp. 1361, 1376–77 (D.D. C.1989); *Nat'l Treasury Employees Union v. Yeutter*, 733 F.Supp. 403, 415 (D.D.C. 1990). This is particularly true where the off-duty conduct is contemporaneous with the suspected drug user's employment. While OPM's reasonable suspicion testing may be predicated in part, or even entirely, on off-duty behavior, each of the five factors enumerated under section 4–10(A) of the plan has a tendency to make the existence of on-duty impairment "more or less probable than it would be without the evidence." *Skinner*, 109 S.Ct. at 1421.

While the Court recognizes that the factors enumerated in section 4–10(A) allow for some discretion, the history of OPM's implementation of section 4–10(A) does not show reliance upon any attenuated off-duty criteria to justify reasonable suspicion testing of its employees. OPM employees have been subject to reasonable suspicion testing since September 1988. After nearly a year and a half, OPM has subjected only one employee, who admitted current drug use, to urinalysis under this portion of the Plan. This would be a different case if OPM tested employees based upon a decade-old arrest for marijuana use. The mere fact that such testing is arguably possible under the stated criteria for reasonable suspicion testing, *see* OPM Plan § 4–10(A)(3), does not render the OPM Plan unconstitutional. *See McLeod v. Dept. of the Army*, 714 F.2d 918, 920–21 (9th Cir. 1983).

Finally, the Supreme Court has not placed much importance on distinctions between on-duty and off-duty drug use. In *Skinner*, post-accident testing of railroad workers could not conclusively establish whether the employee's use of drugs or alcohol contributed to the accident, or merely impaired the employee while off-duty. The Supreme Court nevertheless upheld such testing. 109 S.Ct. at 1420–21. In *Von Raab*, the Supreme Court permitted the Customs Service to terminate or take other disciplinary action against employees who tested positive for drugs, regardless

of whether drug use caused on-duty or off-duty impairment. The clear import of these decisions is that as an employer, the government has a strong interest in its employees' off-duty drug use to the extent that such behavior increases the risk of on-duty drug impairment or otherwise detracts from job performance.

With respect to the OPM employees' expectations of privacy, such expectations are diminished by the requirement of individual suspicion. Employees who use drugs while off-duty or who have a significant history of drug use are on notice that they are subject to reasonable suspicion testing. In this sense, OPM employees subject to reasonable suspicion testing have lesser expectations of privacy than the employees affected in *Skinner* and *Von Raab.*

In a separate argument, plaintiffs contend that the OPM Plan is more intrusive of their privacy expectations than the drug testing programs at issue in *Von Raab* and *Skinner,* based on (1) OPM's alleged practice of conducting reasonable suspicion testing under direct visual observation, and (2) OPM's alleged failure to adequately train its supervisors in recognizing the signs of possible drug use. Plaintiffs do not challenge the reasonableness of the HHS Guidelines, but only the manner in which OPM has implemented these Guidelines under the Plan. Whether or not OPM has complied with the HHS Guidelines, as well as its own administrative regulations, is a disputed factual question that is not properly before the Court for purposes of summary judgment. The Court finds that, on their face, neither the HHS Guidelines nor the OPM administrative regulations covering test-collection procedures and training of supervisors unduly intrude on the employees' expectations of privacy.

Based on the above analysis, the Court holds that the government's strong interest in reasonable suspicion drug testing outweighs the OPM employees' expectations of privacy. Because the reasonable suspicion portion of the OPM Plan is reasonable under the Fourth Amendment, the Court DENIES plaintiffs' motion for summary

judgment as to reasonable suspicion testing.

## V. CONCLUSION

For all the foregoing reasons, the Court orders the following:

1. Plaintiffs' motion for summary judgment on the issue of post-accident testing is GRANTED. The Court permanently enjoins all post-accident testing under the OPM Plan.

2. Defendants' motion for summary judgment on the issue of post-accident testing is DENIED.

3. Plaintiffs' motion for summary judgment on the issue of reasonable suspicion testing is DENIED.

4. Defendants' motion for summary judgment on the issue of whether OPM's reasonable suspicion testing violates the Fourth Amendment is GRANTED.

IT IS SO ORDERED.