908 F.2d 451
 59 USLW 2119, 119 Lab.Cas. P 10,781,
5 Indiv.Empl.Rts.Cas. 887
 Michael S. BLUESTEIN; Dean N. Chantiles; Orange County
Airport Association, Petitioners,
v.
Samuel K. SKINNER, Secretary of Transportation, Department
of Transportation, Federal Aviation
Administration, Respondents.
Richard S. LINN, Petitioner,
v.
Samuel K. SKINNER, Secretary of Transportation, Department
of Transportation, Federal Aviation
Administration, Respondents.
Sheri ALBERT; Charles McCune, Petitioners,
v.
Samuel K. SKINNER, Secretary of Transportation, Department
of Transportation, Federal Aviation
Administration, Respondents.
ASSOCIATION OF PROFESSIONAL FLIGHT ATTENDANTS, Petitioner,
v.
Samuel K. SKINNER, Secretary of Transportation, Department
of Transportation, Federal Aviation
Administration, Respondents.
INDEPENDENT UNION OF FLIGHT ATTENDANTS, Petitioner,
v.
FEDERAL AVIATION ADMINISTRATION, Respondent.
AIRLINE PILOTS ASSOCIATION, INTERNATIONAL, Petitioner,
v.
FEDERAL AVIATION ADMINISTRATION, Respondent.
 Nos. 88-7503, 88-7508, 89-70024, 89-70111, 89-70138 and 89-70139.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Sept. 15, 1989.
Decided July 10, 1990.
 
 Walter Kamiat and Laurence Gold, Washington, D.C., for the Air Line Pilots Ass'n, Ass'n of Flight Attendants, Intern. Ass'n of Machinists and Aerospace Workers, Intern. Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Transp.-Communications Intern. Union.
 Gary Green and Jerry Anker, Washington, D.C., for the Air Line Pilots Ass'n.
 Stephen P. Berzon, Fred H. Altshuler, and Michael Rubin, Altshuler & Berzon, San Francisco, Cal., Scott D. Raphael, Newport Beach, Cal., for Michael S. Bluestein, Dean N. Chantilis, and Orange County Airport Ass'n.
 Deborah Greenfield, Matthew Finucane, and Edward Gilmartin, Washington, D.C., for the Ass'n of Flight Attendants.
 Allison Beck, Washington, D.C., for the Intern. Ass'n of Machinists and Aerospace Workers.
 James T. Grady and Wilma B. Liebman, Washington, D.C., for the Intern. Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America.
 David Rosen and Arthur M. Luby, Washington, D.C., for the Transport Workers of America.
 Larry Mann, Washington, D.C., for the Transp.-Communications Intern. Union.
 Lee Seham, Seham, Klein & Zelman, New York City, Law Offices of Thornton C. Bunch, Jr., San Francisco, Cal., for Richard S. Linn.
 Stewart Weinberg, Van Bourg, Weinberg, Roger & Rosenfeld, San Francisco, Cal., David J. Aronofsky, Arent Fox, Kintner, Plotkin & Kahn, Washington, D.C., William Jolley, Jolley, Walsh, Hager & Gordon, Kansas City, Mo., for Sheri Albert, Charles McCune, Independent Federation of Flight Attendants.
 Michael Gottesman, George Cohen, and Mady Gilson, Bredhoff & Kaiser, Washington, D.C., for the Ass'n of Professional Flight Attendants and Independent Union of Flight Attendants.
 Diane Liff, Gen. Counsel's Office, Dept. of Transp., Robert V. Zener and Leonard Schaitman, Dept. of Justice, Civ. Div., Washington, D.C., Kenneth W. Starr, Sol. Gen., Washington, D.C., for respondents.
 Petition for Review of an Order of the Federal Aviation Administration.
 Before CHAMBERS, CANBY and NORRIS, Circuit Judges.
 WILLIAM A. NORRIS, Circuit Judge:
 
 
 1
 This is a petition for review of Federal Aviation Administration (FAA) regulations requiring random drug testing of flight crew members, maintenance personnel, air traffic controllers, and several other categories of employees in the private commercial aviation industry. Petitioners argue that the regulations violate the Fourth Amendment and are arbitrary and capricious in violation of Sec. 10(e) of the Administrative Procedure Act, 5 U.S.C. Sec. 706(2)(A). We reject both of petitioners' arguments and uphold the regulations.
 
 I. BACKGROUND
 A. The Regulations
 
 2
 The FAA initially proposed random drug testing in an advance notice of proposed rule making. 51 Fed.Reg. 44432 (Dec. 9, 1986). After receiving over 650 written comments, the FAA issued a notice of proposed rulemaking. 53 Fed.Reg. 8368 (March 14, 1988). Over 260 written comments were filed in response to this notice, and the FAA also held a series of public hearings. The final rule was issued on November 21, 1988. 53 Feg.Reg. 47024.
 
 
 3
 The FAA concluded that while drug use is not "widespread" among commercial aviation personnel and there is no "overwhelming" drug problem in the industry, nevertheless the record "does show concrete evidence of drug use in the commercial aviation sector." 53 Fed.Reg. 47029, 47030. Accordingly, the FAA decided that "[i]n order to ensure that aviation safety is not compromised by a failure to detect drug users in the aviation industry, the FAA believes that it is appropriate and necessary to establish a comprehensive anti-drug program at this time." 53 Fed.Reg. 47025.
 
 
 4
 The regulations adopted by the FAA require employee drug testing to be performed by every Part 121 and 135 certificate holder (generally, commercial air carriers, both scheduled and unscheduled, carrying passengers or cargo[1]), as well as each air traffic control facility.[2] 53 Fed.Reg. 47057-58 (App. I--definition of "employer"). The following employees must be tested: (a) flight crew members; (b) flight attendants; (c) flight instructors or ground instructors; (d) flight testing personnel; (e) aircraft dispatchers; (f) maintenance personnel; (g) aviation security or screening personnel; and (h) air traffic controllers. 53 Fed.Reg. 47058 (App. I Sec. III). Tests must be performed for marijuana, cocaine, opiates, phencyclidine (PCP) and amphetamines. Id., Sec. IV.
 
 
 5
 The regulations require testing of these employees on a random basis. Id., Sec. V.C. To eliminate any supervisory discretion in selecting the employees to be tested and to avoid "potential bias toward and selective harassment of an employee," 53 Fed.Reg. at 8375, selection of employees to be tested must be made "using a random number table or a computer-based number generator that is matched with an employee's social security number, payroll identification number, or any other alternative method approved by the FAA." 53 Fed.Reg. 47058, Sec. V.C. After the first year of testing, employers must conduct random tests at an annualized rate of not less than 50 percent of the employees performing the functions listed. Id., Sec. V.C. (c)(2).[3]
 
 
 6
 The procedures under which the testing is to be done are described in Procedures for Transportation Workplace Drug Testing Program, 53 Fed.Reg. 47002 (Nov. 21, 1988); see also 53 Fed.Reg. 47056-61, and closely follow the HHS drug-testing procedures for government employees set forth at 53 Fed.Reg. 11,970 (April 11, 1988). Upon arriving at the "collection site," the employee must present photographic identification or be identified by a representative of the employer, and must remove any outer garments, such as a coat or jacket. The employee may choose to provide the required urine specimen in a stall or otherwise partitioned area. The toilet water is to be tinted with a blue dye to prevent use of that water to adulterate the specimen, and a monitor of the same gender as the employee must remain in the area, but outside the stall. After receiving the specimen, the monitor must inspect it to ensure that it is of proper volume, temperature, and color. The monitor must then arrange, following specified chain-of-custody procedures, to ship the specimen to an HHS-certified drug testing laboratory.
 
 
 7
 The laboratory to which the specimen is sent must perform an immunoassay test. If the specimen tests positive, the test must be confirmed using gas chromatography/mass spectrometry techniques. If the initial positive test is confirmed, the employer's Medical Review Officer (who must be a qualified physician) determines whether there is an "alternative medical explanation" and in that connection must provide the employee with an opportunity to discuss the result and submit any medical records regarding legally prescribed medication. The employee may also demand a retest of the original specimen at the original laboratory or another HHS-certified laboratory.[4] In addition, there is an absolute prohibition against the release of drug test results to third parties without the specific, written consent of the employee.
 
 
 8
 Employees who test positive for prohibited drugs and are unable to offer a satisfactory alternative explanation must be removed from their positions, and may not return to duty except upon the recommendation of a Medical Review Officer or the Federal Air Surgeon.
 
 B. This Litigation
 
 9
 Petitioners in this case include employees engaged in various occupations within the commercial aviation industry who are subject to the FAA drug-testing rules, the principal labor organizations in the industry, and an organization of aviation employees and employers. Following the FAA's issuance of the rules, timely petitions for review were filed in this Circuit, the Fifth Circuit, and the D.C. Circuit. Those petitions were then consolidated in this proceeding. We have jurisdiction under 49 U.S.C.App. Sec. 1486.
 
 II. ANALYSIS
 A. The Fourth Amendment Challenge
 
 10
 Petitioners' primary contention is that the drug tests required by the FAA are unreasonable searches in violation of the Fourth Amendment. Our disposition of this issue is guided by the Supreme Court's decisions in National Treasury Employees Union v. Von Raab, 489 U.S. 656, 109 S.Ct. 1384, 103 L.Ed.2d 685 (1989), and Skinner v. Railway Labor Executives Ass'n, 489 U.S. 602, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989). In Von Raab, the Court upheld a United States Customs Service requirement that employees seeking transfers or promotions to certain positions undergo urinalysis. In Skinner, the Court upheld a Federal Railroad Administration program requiring railroads to administer blood and urine tests to train workers involved in major railroad accidents, and permitting railroads to administer breath and urine tests to employees who violate certain safety rules.
 
 
 11
 Von Raab and Skinner settle some of the threshold questions in this case. First, drug testing performed by private employers under compulsion of government regulations constitutes governmental action subject to constitutional restrictions. See Skinner, 109 S.Ct. at 1411-12. Second, because "it is clear that the collection and testing of urine intrudes upon expectations of privacy that society has long recognized as reasonable," urinalysis "must be deemed [a] search [ ] under the Fourth Amendment." Skinner, 109 S.Ct. at 1413; accord Von Raab, 109 S.Ct. at 1390. Third, the usual Fourth Amendment requirements of a warrant and probable cause do not necessarily apply in the drug testing context. Rather, when a search "serves special governmental needs, beyond the normal need for law enforcement, it is necessary to balance the individual's privacy expectations against the Government's interests to determine whether it is impractical to require a warrant or some level of individualized suspicion in the particular context." Von Raab, 109 S.Ct. at 1390.
 
 
 12
 In the present case it is clear that the FAA drug testing requirements serve "special needs, beyond the normal need for law enforcement" within the meaning of Von Raab. As in Von Raab, the FAA rules specify that "[t]est results may not be used in a criminal prosecution of the employee without the employee's consent." Id. Moreover, just as the Customs Service testing program in Von Raab was designed "to deter drug use among those eligible for promotion to sensitive positions ... and to prevent the promotion of drug users to those positions," id., so is the FAA's program designed to deter drug use among employees in safety-sensitive positions and to prevent the performance of safety-sensitive functions by employees under the influence of narcotics. We must therefore determine the constitutionality of the FAA program by balancing the government's interests against the employees' privacy interests.
 
 
 13
 In striking this balance, we take our primary guidance from Von Raab, because we think that the random testing at issue in this case is more closely analogous to the facts of Von Raab than to those of Skinner. In Von Raab, as in this case, the testing program did not require any level of individualized suspicion or the occurrence of any suspicion-triggering event; in Skinner, on the other hand, testing was limited to those employees involved in a train accident or safety rule violation. Accordingly, we proceed to consider whether this case can be distinguished from Von Raab in a way that would tip the balance against the constitutionality of the FAA's drug testing program.
 
 
 14
 In Von Raab, the Customs Service initiated a program of testing employees for drugs as a condition of employment in positions that met any one of three criteria: (1) direct involvement in drug interdiction or enforcement of related laws; (2) a requirement that the incumbent carry a firearm; or (3) a requirement that the incumbent handle "classified" material. See id. at 1388. The drug tests followed procedures quite similar to the FAA procedures at issue in this case. See id. at 1388-89, 1394 n. 2. A union of federal employees challenged the program as violative of the Fourth Amendment. The Supreme Court upheld the testing program as applied to the first two categories of employees listed above, and remanded as to the third category (employees handling classified information).
 
 
 15
 After concluding that the testing program invaded reasonable expectations of privacy and that the tests were motivated by special needs other than law enforcement, the Court balanced the private and governmental interests at stake, and decided that the balance justified the testing program. The Court reasoned that
 
 
 16
 [t]he Government's compelling interests in preventing the promotion of drug users to positions where they might endanger the integrity of the Nation's borders or the life of the citizenry outweigh the privacy interests of those who seek promotion to these positions, who enjoy a diminished expectation of privacy by virtue of the special, and obvious, physical and ethical demands of those positions.
 
 Id. at 1397-98.[5]
 
 17
 In reaching this conclusion, the Court rejected the petitioners' contention that there was insufficient evidence of a drug problem in the Customs Service to justify suspicionless testing. The Court noted that drug abuse is a pervasive social problem, and stressed that the testing program was aimed as much at deterrence as at detection. "In light of the extraordinary safety and national security hazards that would attend the promotion of drug users to positions that require the carrying of firearms or the interdiction of controlled substances," the Court wrote, "the Service's policy of deterring drug users from seeking such promotions cannot be deemed unreasonable." Id. at 1395.
 
 
 18
 The government interest in preventing drug use by persons holding safety-sensitive positions in the aviation industry is at least as compelling as the interest in preventing drug use by Customs officers. Indeed, petitioners concede that "the government has a strong interest in assuring aviation safety and that the drug-related job-impairment of any safety-sensitive aviation employee is a basis for the most serious concern." Reply Brief of Petitioners at 15-16. Nonetheless, petitioners argue that the FAA has failed to demonstrate a sufficiently high level of drug use in the industry to justify its testing program.
 
 
 19
 In our view, the evidence relied upon by the FAA is stronger than the evidence relied upon by the Customs Service in Von Raab. In Von Raab, the Service's testing scheme was not implemented in response to any perceived drug problem among Service employees, and there was evidence that only 5 employees of 3,600 tested positive for drugs. Id. at 1394. As discussed earlier, the Supreme Court rejected the argument that this evidence was insufficient to establish a substantial governmental need, because of the deterrent purposes of the program and the potential for serious harm. Id. at 1395.
 
 
 20
 In the present case, the FAA administrative record included evidence that a number of pilots and other airline crew members had received treatment for cocaine overdoses or addiction; that tests by companies in the industry had turned up instances of drug use by pilots and mechanics; and that drugs were present in the bodies of pilots in two airplane crashes.[6] Moreover, the harm that can be caused by an airplane crash is surely no less than the harm that might be caused by drug impairment in the course of Customs Service employment. When viewed in this light, the need for the FAA's testing program equals, if not exceeds, that for the Customs Service program approved in Von Raab.
 
 
 21
 Petitioners also argue that the FAA testing program intrudes more deeply on privacy interests than the program approved in Von Raab.[7] They point to the fact that the FAA provides for unannounced (i.e., immediate) testing, while the Customs Service program requires at least five days' notice; and that the FAA program is random, while the Customs Service program is only activated by certain events (i.e., applying for certain positions).
 
 
 22
 Although these factors add some weight to the "invasion of privacy" side of the Fourth Amendment balance, they are insufficient to tip the scales against the FAA drug testing program at issue here. The reasoning of the D.C. Circuit in Harmon v. Thornburgh, 878 F.2d 484 (D.C.Cir.1989), is instructive. In Harmon, the court upheld (as to some employees) a Justice Department testing plan that provided for random testing and notice "on the same day, preferably within two hours, of the scheduled testing." 878 F.2d at 486 (interior quotation omitted). The court noted:
 
 
 23
 Certainly the random nature of the OBD testing plan is a relevant consideration; and, in a particularly close case, it is possible that this factor would tip the scales. We do not believe, however, that this aspect of the program requires us to undertake a fundamentally different analysis from that pursued by the Supreme Court in Von Raab.
 
 
 24
 Id. at 489. This is particularly true in light of the FAA's reasonable conclusion that random testing without advance notice will prove to be a greater deterrent than testing with advance notice.[8]
 
 
 25
 Finally, petitioners argue that the FAA plan grants employers too much discretion. This argument is unpersuasive. First, the strict randomness requirements ensure that no employer will have discretion in deciding which employees should be searched. Second, employers' discretion as to how to structure their testing programs will be limited by collective bargaining and the requirement that the FAA approve the plans of individual employers.[9]
 
 
 26
 In sum, we conclude that the Fourth Amendment issue in this case cannot be meaningfully distinguished from the Fourth Amendment issue addressed by the Supreme Court in Von Raab. We therefore reject petitioners' constitutional challenge to the FAA drug testing program.
 
 B. The APA Challenge
 
 27
 Petitioners argue that the FAA failed to offer a satisfactory explanation for its decision, and that the decision was therefore arbitrary and capricious in violation of the Administrative Procedure Act, 5 U.S.C. Sec. 706(2)(A). See Motor Vehicle Mfrs. Ass'n v. State Farm Mutual Ins. Co., 463 U.S. 29, 43, 103 S.Ct. 2856, 2866, 77 L.Ed.2d 443 (1983) (agency must articulate a satisfactory explanation for its action). In particular, petitioners question the FAA's decision to reject the recommendation of the National Transportation Safety Board that the FAA rely on non-random forms of drug testing.
 
 
 28
 This argument is without merit. The FAA, contrary to petitioners' contention, explained specifically why it chose to require random testing, reasoning that there was more evidence supporting the efficacy of random testing programs than of non-random programs. See 53 Fed.Reg. 47034, 47035, 47048. Its decision that safety concerns outweighed privacy concerns in this context was a reasonable, if controversial, decision, and cannot be overturned as arbitrary and capricious.
 
 
 29
 Petitioners also argue that the FAA's decision to include flight attendants within the testing requirements is inconsistent with prior FAA decisions denying petitions of flight attendants to establish safety rules limiting their on-duty time. The duty time decisions, however, do not stand for the proposition that impairment of flight attendants' performance is never a public safety consideration. Rather, the FAA concluded that, on the evidence before it, there was no correlation between flight attendant duty time and risk to passengers. We see no conflict between the duty time decisions and the inclusion of flight attendants in the drug testing program.[10] Accordingly, we hold that the FAA acted within its authority in requiring random drug testing of flight attendants.
 
 III. CONCLUSION
 
 30
 For the foregoing reasons, we affirm the decision of the Federal Aviation Administration.
 
 
 
 [1]
 See 14 C.F.R. Secs. 121.1, 135.1
 
 
 [2]
 Air traffic control facilities operated by, or under contract with, the FAA or the military are excepted. 53 Fed.Reg. 47057 App. I. For the most part, controllers at these facilities are covered by other drug testing programs
 
 
 [3]
 The regulations also require pre-employment testing, periodic testing at the employee's first medical examination for those employees required to take a Part 67 medical examination, post-accident testing, testing based on reasonable cause, and testing after return to duty following a positive test or a refusal to test (return to duty is authorized if the employee has completed drug rehabilitation, and the medical review officer approves his return to work). 53 Fed.Reg. 47043-44, 47058, App. I Sec. V. Petitioners do not challenge these tests
 
 
 [4]
 The employee's right to demand a retest is not part of the HHS Guidelines for government agencies; it was added by DOT. 53 Fed.Reg. 47059, Sec. VI.C
 
 
 [5]
 The Court found the record insufficiently clear to assess the extent of the government's interest in testing employees who handle classified material, and therefore remanded for the court of appeals "to clarify the scope of this category of employees subject to testing." Id. at 1397
 
 
 [6]
 Although the FAA has made a showing of drug use by airline employees, we note that nothing in Von Raab requires such a showing. See Harmon v. Thornburgh, 878 F.2d 484, 487 (D.C.Cir.1989) ("Nor is it necessary [under Von Raab ] that a documented drug problem exist within the particular workplace at issue.")
 
 
 [7]
 The petitioners have not urged that their expectation of privacy is any less "diminished" than that of the Customs employees in Von Raab. We therefore assume for the purposes of our decision that this case is not distinguishable from Von Raab in that respect
 
 
 [8]
 For other decisions upholding random drug testing in the wake of Von Raab, see American Fed. of Gov't Employees v. Skinner, 885 F.2d 884 (D.C.Cir.1989); National Fed. of Federal Employees v. Cheney, 884 F.2d 603 (D.C.Cir.1989); Thomson v. Marsh, 884 F.2d 113 (4th Cir.1989)
 
 
 [9]
 The FAA has stated that it will review the individual employer programs to ensure that discretion is in fact sufficiently limited under each plan. See 53 Fed.Reg. 47028
 
 
 [10]
 Although petitioners do not directly contend in this proceeding that flight attendant positions are not safety-sensitive, it is nonetheless worth noting that the administrative record adequately supports the FAA determination that such positions are, in fact, safety-sensitive. Flight attendants must perform important safety functions in the event of emergencies, and are also routinely responsible for ensuring that luggage is safely stored and the airplane doors properly closed and locked prior to departure