**AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, L–2110, et al., Plaintiffs,**

v.

**Edward J. DERWINSKI, Secretary of Veterans Affairs, U.S. Department of Veterans Affairs, et al., Defendants.**

**Jeffrey HANSEN, et al., Plaintiffs,**

v.

**Edward J. DERWINSKI, Secretary of Veterans Affairs, U.S. Department of Veterans Affairs, et al., Defendants.**

Nos. C–88–20357–WAI, C–88–20361–WAI.

United States District Court,
N.D. California.

July 31, 1991.

Cliff Palefsky, McGuinn, Hillsman & Palefsky, San Francisco, Cal., for plaintiffs.

Thomas Turnage, Washington, D.C., for defendants.

## MEMORANDUM OF DECISION

INGRAM, District Judge.

These consolidated actions challenge and seek to enjoin the implementation of the testing components of the Veterans Administration Drug Free Workplace Plan adopted by the Veterans Administration, 53 Fed.Reg. 11970 (the "Plan") in response to the provisions of Executive Order 12564.51 Fed.Reg. 32889.

This court has previously granted preliminary injunctions restraining implementation of the Plan's testing provisions with

respect to random, post-accident and reasonable suspicion testing. Now before the court are cross motions for summary judgment and defendants' motion to vacate preliminary injunctions.

Each of the motions are GRANTED in part and DENIED in part, as hereinafter provided.

There are six different categories of persons or situations which, under the Plan, can trigger urinalysis drug testing to discern the presence in the body of marijuana, cocaine, the opiates, the amphetamines and phencyclidine ("PCP"). These are random testing, reasonable-suspicion testing, post-accident testing, follow-up testing, applicant testing and voluntary testing.

Plaintiffs in Action No. 88–20361 challenge random, post-accident, reasonable-suspicion and follow-up testing. Plaintiffs in Action No. 88–20357 and the intervenors challenge all types of testing.

Plaintiffs in Action No. 88–20361 are five individuals: one physician; one pharmacist; one nurse; and two medical technician supervisors. Plaintiffs previously sought certification of a class. The motion was denied, largely upon the representation of defendants that the result with respect to the instant plaintiffs, who work at the Palo Alto and San Diego facilities of the Veterans Administration, will largely *de facto* determine the availability for testing of similarly situated employees within the agency. Plaintiffs in Action No. 88–20357 are labor unions: the American Federation of Government Employees; the Service Employees International Union; and the National Association of Government Employees. These unions represent on the order of more than 100,000 Veterans Administration employees. AFGE represents some professional, but mostly non-professional, employees including at least one member in each job classification which is non-managerial or non-supervisorial and is listed in Appendix A to the Plan. AFGE represents, in the words of declarant Charles Mintess "VA employees who will be subject to 'reasonable-suspicion' and 'accident or unsafe practice testing'." Declaration of C.S. Mintess. The Service Employees International Union represents over 10,000 Veterans Administration employees including persons who work as nurses and technicians and public safety and maintenance employees. Declaration of David Baker.

## RANDOM TESTING

More than 90% of the Testing Designated Positions ("TDPs") designated under the Plan for random testing are medical positions alleged to be "safety-sensitive." The five plaintiffs in Action No. 88–20361 are: Jeffrey Hansen, Martin Hudson, Karen Russ, David Martin and Stephen Baird.

Jeffrey Hansen is a Clinical Specialist Pharmacist, GS–12/8, at Veterans Administration Hospital, Palo Alto, California. At the time of the commencement of this action Mr. Hansen was a Pharmacist, GS–11/6. He is licensed in the states of Oregon and California. He is not a member of a union.

At the time of initial hiring Mr. Hansen submitted to a physical examination, including urinalysis. No test for drugs was included in the urinalysis. He has not been required to take another physical examination since he was hired except for annual tuberculosis skin tests. He has never been questioned with respect to personal drug use, either at the time he was hired or since.

Mr. Hansen has stated in his declaration of June 16, 1988, that "street" drugs, such as heroin or PCP are neither stored nor used at the hospital. All narcotic drugs stored at the hospital are kept under lock and key, and there is a detailed "sign-in and sign-out" procedure under which drugs are dispensed from storage. There are locked medication carts on each ward to which nurses have keys. Drugs which are dispensed from storage, but which are not used, are "wasted" in front of a witness.

In his present position, Mr. Hansen works with a team of medical professionals, including physicians, nurses and other technicians, to develop treatment programs for individual patients. Hansen is aware of the job performance of other team mem-

bers and they are aware of his performance. Declarations of Hansen: June 16, 1988; October 12, 1988.

Karen Russ, R.N., is a regular full-time employee of the Veterans Administration Hospital in Palo Alto, California. She is a graduate nurse and has been licensed in California since 1982.

Ms. Russ is not represented by any union. She commenced her employment as a regular part-time nurse in the Intensive Care Unit and subsequently became employed full-time in the Nursing Education Unit. Her job title as of November 14, 1990 was and has been since March 1989 Nursing Instructor, Gerontology. By Declaration dated November 14, 1990, Ms. Russ states that in her current job she does "occasionally perform services involving direct contact with patients when the hospital is short-staffed." Such activities occupy not more than five percent of her time. She has no access to narcotic drugs. Her current position is classified as intermediate grade, step 5, Registered Nurse. She works at both the Palo Alto, California and Menlo Park, California facilities of the Veterans Administration. The latter facility furnishes extended care, psychiatric and drug rehabilitation functions.

At the time of hiring Ms. Russ took a physical examination including urinalysis, which did not, she believes, include a drug test. She has never been questioned with respect to her personal use of drugs.

Ms. Russ stated in her declaration of October 13, 1990 that there is an "extensive" sign-in and sign-out procedure at the hospital for the dispensing of drugs and a requirement that any unconsumed dispensed drug be "wasted" in the presence of a witness.

In her present position, Ms. Russ does not handle medications or surgical instruments.

Medical personnel work in teams and observe each other's job performance, and any impairment in an individual job performance is detectable. Declaration of Russ, October 13, 1990; Supplemental Declaration of Russ, November 14, 1990.

David Martin is a regular full-time employee of the Veterans Administration Medical Center in San Diego, California, with an employment history with the Veterans Administration spanning fifteen years. His job classification is Medical Technologist GS–644. He is also Supervisor of Irregular Tours which covers the swing and graveyard shifts. He supervises six medical technologists in the Hematology, Blood Bank and Coagulation Departments of Laboratory Services. He is licensed by the State of California. He is not represented by any union.

When hired, Mr. Martin was given a physical examination including urinalysis, which did not, to his knowledge, cover testing for drugs. He has never been questioned about drug use. Since employment he has not been required to take further physical examinations, except for an annual tuberculosis skin test.

In his work he has no contact with narcotics or other drugs. Declaration of Martin, June 15, 1988.

Stephen Baird, M.D., is a physician and a regular, full-time employee of the Veterans Administration Medical Center, San Diego, California. He is Chief of Laboratory Services and head of the Hematology Division at the Medical Center. His job classification is Chief, GS–15. He is a pathologist licensed to practice in California, and has been certified by the American Board of Pathology. He has been certified in clinical and in anatomical pathology. He is not a member of any union.

A decline in performance such as a high rate of errors in results or failures to follow laboratory procedures are the subject of continuous documentation and review, as is poor performance which poses any threat to a patient. The Laboratory Division of which he is Chief includes the departments of Hematology, Blood Donor, Blood Bank, Microbiology, Surgical Pathology, Autopsy Pathology, Cytology, Immunology and Virology and Microscopy.

Dr. Baird was given a physical examination at the time of initial performance, and none since. He has never been questioned about drug use.

He has no contact with narcotics or other drugs in the course of his work in the Laboratory Services Division.

Declarations of Baird dated June 15, 1988 and October 12, 1990.

Martin Hudson is a regular employee of the Veterans Administration Hospital in Palo Alto, California, where he is a supervisor of the Dialysis Unit. He supervises the work of four dialysis technicians. As supervisor he hires, trains and supervises the technicians who perform the dialysis functions. He is on the Dialysis Unit constantly while at work and observes the work of the technicians whom he supervises. Also on the unit are a Renal Fellow, a resident physician or a medical student and the physician who is the director of the dialysis program. Patient treatment lasts three hours per treatment and requires monitoring of the dialysis instrument and of the patient's blood pressure. The dialysis machines are self-monitoring, in the sense that they emit visible and audible warnings when some mechanical problem arises. Technicians are also supervised by a charge nurse. All technicians have direct patient contact for a week at a time. When not so assigned, they maintain the machines, do lab work and order supplies.

Each of those five named plaintiffs in Action No. 88–20361 are alleged to be occupants of "safety-sensitive" positions and therefore to be subject to random testing. Those plaintiffs occupy positions which are listed within Categories I and II (Health Care Employees) in the Veterans Administration's compilation of safety-sensitive TDPs. Sixth Declaration of Egan, first attachment.

Plaintiff unions, in Action No. 88–20357, are alleged to represent at least one person within each of the remaining categories on that compilation. Those categories are:

III. Law Enforcement/Protection of Life and Property Employees.

IV. Other Public Safety Employees, Including Safety Engineer, Motor Vehicle Operator, Electrician (and several classifications of mechanics).

Thus all of "safety-sensitive" positions to be subject to random testing are alleged to be subject to the compelling, governmental interest of public safety, and as such require a showing of a direct nexus between the duties of each position so described and the nature of the feared violation. *Harmon v. Thornburgh*, 878 F.2d 484 (D.C.Cir. 1989), *cert. denied*, 493 U.S. 1056, 110 S.Ct. 865, 107 L.Ed.2d 949 (1990).

Aside from the declarations of the five plaintiffs in Action No. 88–20361, Responses to Second Set of Written Interrogatories, and to some extent the Declarations of Turnage and Egan, there is no evidence before the court which is descriptive of job duties in the relevant health care employees category other than Appendix A to the Drug Free Workplace Plan of the Veterans Administration dated October 15, 1987, which was modified in some particulars by the recent approval by the Secretary of Veterans Affairs of recommended modifications submitted by the VA Drug Free Workplace Task Force on October 10, 1990. See Fourth and Sixth Declarations of Egan.

The court must individually examine each of the safety-sensitive positions with a view to the determination of the requisite nexus, and in the context of compelling government need as compared with employee expectation of privacy.

The court has examined the Declarations of Sidney H. Schnoll, M.D., Ph.D. and the Declaration of Martha R. Harkey, Ph.D., each of which expresses the opinion that urine drug testing is an ineffective and inaccurate method of screening employees for drug abuse, is overbroad, and that the method of testing proposed by the Veterans Administration is not in accordance with accepted medical principles, and will not reveal whether or not a tested person is impaired by the ingestion of drugs.

■ The failure of a given test to measure actual employee impairment is not fatal to the propriety of its use. *Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. 602, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989); *American Fed. of Gov. Employees v. Skinner*, 885 F.2d 884 (D.C.Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 1960, 109 L.Ed.2d 321 (1990).

■ Dr. Schnoll has suggested alternative effective means of testing directly for impairment and for early identification of chronic drug users. Declaration of Schnoll, pages 6; 7. Such means constitute less intrusive and perhaps more efficacious alternatives. The existence of such means, however, does not diminish the force of the Agency's interest in requiring drug tests, nor does the constitutionality and reasonableness of mandated tests turn on the availability of alternative and less intrusive means for the identification of drug users. *International Brotherhood of Teamsters v. Department of Transp.,* 932 F.2d 1292 (9th Cir.1991).

It is clear to the court that all of the named plaintiff health care professionals in Action No. 88–20361 have active patient care responsibilities, either directly or in the providing of necessary diagnostic or therapeutic care to patients. Ms. Russ devotes only five percent or less of her time to patient care and the rest of her time to instructional duties in the field of gerontology, but five percent is a significant portion of time considering the importance of the care then rendered.

The court finds that the nexus requirement articulated by *Harmon v. Thornburgh,* 878 F.2d 484, is fulfilled in the case of health professionals who are responsible for direct patient care, either with direct patient contact or in the performance of diagnostic testing or therapeutic functions or the preparation and dissemination of drugs and medicines. Even momentary lapses could cause serious consequences, or at a minimum, if undiscerned, might subject a patient to procedures which would not have otherwise been indicated.

■ Because required drug testing implicates fourth amendment interests, *Bluestein v. Skinner,* 908 F.2d 451 (9th Cir. 1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 954, 112 L.Ed.2d 1042 (1991); *Teamsters,* 932 F.2d 1292, the reasonableness of the intrusion must be determined by balancing the Agency's interest in conducting the test against the Agency employee's expectation of privacy. Neither individualized suspicion of the persons to be tested nor the identification of a pre-existing "drug problem" within the Agency are necessary factors. *National Treasury Employees Union v. Von Raab,* 489 U.S. 656, 109 S.Ct. 1384, 103 L.Ed.2d 685 (1989); *Bluestein,* 908 F.2d 451; *Teamsters,* 932 F.2d 1292.

■ The compelling force of the governmental interest in the conduct of a testing program is measured by whether the interest in question falls within one or more of three specific governmental interests: (1) maintaining the integrity of workers in executing their essential mission; (2) enhancing public safety; and (3) protecting "truly sensitive" information. *Harmon,* 878 F.2d 484; *American Fed. of Gov. Employees v. Cheney,* 754 F.Supp. 1409 (N.D.Cal.1990).

■ In the case of the five named plaintiffs in Action No. 58–20361, it appears to the court that those plaintiffs, all regulated licentiates within their respective professional groups, are of legitimate and compelling concern to defendants. The maintenance of professional and personal integrity in the execution of their mission, the care and treatment of inpatients and outpatients, is of compelling concern. The paramount consideration of safety of members of the public who are eligible to use Veterans Administration hospitals and facilities is apparent on its face. Hospitals must exist for precisely that purpose. The gravity of the responsibilities of such medical professionals is at least as great as that of locomotive engineers, flight attendants, and pipeline workers, and the risks associated with drug-impaired performance equally catastrophic.

Random drug testing, as compared with other forms of testing, offers the best potential deterrent to drug use. This factor, coupled with the possibility of catastrophic accident, is sufficient to show a strong governmental interest in random testing.

While plaintiffs contend that those listed in categories I and II of the Plan have the same expectation of privacy that any federal employees would entertain, it seems to the court that persons presented to the relevant public as professional licentiates,

and who have voluntarily subjected themselves to the licensing regulations applicable to their chosen calling have proportionately diminished their expectation. Those held out as medical professionals deservedly have the aura of professional competence. It is hard to see how such a person would reasonably hold the same expectation of privacy as that entertained by a clerical worker or other nonprofessional employee in federal service. Some support for this view is found in *Plane v. United States*, 750 F.Supp. 1358 (W.D.Mich.1990), where the court said with respect to nurses

> (I) also find it reasonable to expect that someone who has chosen a profession such as nursing, where life and death situations can arise, has a lesser expectation of privacy in their ability to provide the services necessary to perform their duties.

*Id.* at 1368.

The public safety significance of the work of these medical and health care professionals is supported by the provisions with respect to them contained in Appendix A to the Plan as amended. Plaintiffs criticize these as speculative and assuming a worst case situation. Clearly all of the categories of persons previously found to be properly testable under similar plans such as locomotive engineers, pipeline workers, truck drivers and others have been considered in the light of the type of situation which it is most desirable to avoid, the type of situation in which a momentary lapse of attention can lead to the direst of consequences.

■ Furthermore, although deterrence of drug use, of itself, does not create a compelling government interest, *Skinner*, 489 U.S. at 634, 109 S.Ct. at 1422 (Stevens, J., concurring), deterrence is a factor to be considered by the court in evaluating the quantum of government interest, *Connelly v. Newman*, 753 F.Supp. 293 (N.D.Cal. 1990), and as a vital factor in performing a balancing of interests. *Bluestein*, 908 F.2d 451.

Because the positions occupied by the five named plaintiffs, those of physician, nurse, pharmacist, medical technician and dialysis technician, require the discharge of duties fraught with such risk of injury to others that even a momentary lapse of attention can have disastrous consequences, the court finds that defendants have a compelling interest in requiring the proposed random drug testing and that interest prevails over the expectation of privacy entertained by the incumbents of those five positions. As noted, as licensed members of professions subject to qualifications, examination and regulation, plaintiffs are entitled to expect less freedom from founded intrusion than other federal employees not so situated.

■ In this connection, it is appropriate to address a concern not previously dealt with in the decided cases because it is unique to a hospital environment. The constant presence and dispensing of medicinal preparations containing drugs is part of the currency of hospital life. While the precautions taken in the dispensing of drugs as reflected in plaintiffs' declarations are hopefully successful, opportunities for misuse of such preparations by those inclined to do so are patent. The propinquity to drugs is therefore a factor to be weighed in the balance.

Defendants in Action No. 88–20361 are entitled to summary judgment on the issue of the propriety of random testing, and the preliminary injunction heretofore entered is dissolved and set aside. While the denial of class certification precludes consideration of the circumstances of similarly situated persons who are not named plaintiffs, the court is of the opinion that what has been said with respect to the random testing of named plaintiffs is equally applicable to other category I and II employees as set forth in Exhibit L appended to the Sixth Declaration of Egan.

In Action No. 88–20357, the American Federation of Government Employees does not represent persons who occupy positions designated as subject to random testing. Affidavit of Charles Mintess, November 14, 1990, at 5, paragraph 7. The Service Employees International Union represents persons in a wide variety of positions including nurse, technician, public safety and mainte-

nance positions, Declaration of David Baker, October 11, 1990, and apparently challenges the implementation of the Plan with respect to all persons affected thereby who are represented by it.

With respect to random testing what has been said with respect to positions within categories I and II is equally applicable to the plaintiffs in Action No. 88–20357. The court now turns to a consideration of those positions falling within categories III and IV with respect to random testing.

The court has carefully considered each of the descriptions of positions and proffered justifications for inclusion in random testing as set forth in Appendix A to the Plan.[1] This consideration is primarily to determine whether the proffered position fulfills the nexus requirement of *Harmon*, 878 F.2d 484; *Guiney v. Roache*, 873 F.2d 1557 (1st Cir.), *cert. denied*, 493 U.S. 963, 110 S.Ct. 404, 107 L.Ed.2d 370 (1989); *Policeman's Benevolent Ass'n of N.J., Local 318 v. Township of Washington*, 850 F.2d 133 (3d Cir.1988), *cert. denied*, 490 U.S. 1004, 109 S.Ct. 1637, 104 L.Ed.2d 153 (1989). That is, there must be a showing of a direct nexus or connection between the duties of the position in question and the nature of the feared violation, which in this case is a failure of duty performance attributable to drug impairment.

■ The court finds an adequate showing of that nexus with respect to each of the following positions:

*Group 1.*
Firefighter
Police Officer/Detective
Guard
Protection Officer
Criminal Investigator
Motor Vehicle Operator
Automotive Mechanic

There is a supportable nexus with respect to motor vehicle operators who carry passengers (Appendix A) and the mechanics who maintain the vehicles so employed. *AFGE v. Skinner*, 885 F.2d 884; *AFGE v. Cheney*, 754 F.Supp. 1409.

Automotive mechanics who maintain vehicles used in the transportation of persons are indistinguishable from the maintenance personnel found to be subject to testing in *Bluestein*, 908 F.2d 451. The safety interests are the same whether a mechanic be employed by a federal agency or by a common carrier.

Of the law enforcement positions included in Group 1, only Criminal Investigators are authorized to be armed. (Second Response to Interrogatories). However, Guards, Protection Officers and Police Officers/Detectives who work in an environment partly devoted to the care and treatment of those suffering from drug-related problems, who perform security and regular inventories of drugs and controlled substances and who are charged with the investigation of drug-related crimes on VA premises are clearly performing functions akin to drug interdiction. *Cf. Von Raab*, 489 U.S. 656, 109 S.Ct. 1384.

A satisfactory nexus has been demonstrated with respect to those positions, as it has also for Firefighters. *AFGE v. Cheney*, 754 F.Supp. 1409.

■ The court finds no supportable nexus between the duties of each of the following positions and the nature of the feared violation when viewed from the perspective of compelling governmental interest.

*Group 2.*
Safety and Occupational Health Specialist/Manager
Industrial Hygienist/Safety Manager
Safety Engineer
Boiler Plant Operator
Utility System Repairer
Utility System Operator

---

1. The positions examined are: Firefighter, Police Officer, Detective, Guard, Protection Officer, Criminal Investigator, Safety and Occupational Health Specialist/Manager, Industrial Hygienist/Safety Manager, Safety Engineer, Boiler Plant Operator, Utility Systems Operator, Electric Power Operator, Air Conditioning Equipment Operator, Motor Vehicle Operator, Electronics Mechanic, Electrician, Electrician (High Voltage), Welder, Pipefitter, Utility System Preparer/Operator, Pest Controller, Air Conditioner Equipment Mechanic, Elevator Mechanic, Automotive Mechanic, Heavy Mobile Equipment Mechanic, Instrument Maker.

Electric Power Controller
Air Conditioning Equipment Mechanic
Air Conditioning Equipment Operator
Electronics Mechanic
Electrician
Electrician (High Voltage)
Welder
Pipefitter
Pest Controller
Boiler Plant Equipment Mechanic
Elevator Mechanic
Industrial Equipment Mechanic
Heavy Mobile Equipment Mechanic
Instrument Maker

Accordingly, defendants are entitled to summary judgment with respect to those positions listed in Group 1 and the preliminary injunction heretofore entered is dissolved and set aside with respect to the random testing of the incumbents of those positions. Plaintiffs are entitled to summary judgment with respect to the positions listed within Group 2.

## REASONABLE–SUSPICION TESTING

██  Reasonable-suspicion testing is applicable under the Plan to all employees of the Veterans Administration.

The Plan provides that reasonable suspicion testing may be based on:

1. Observable phenomena, such as direct observation of drug use or possession and/or the physical symptoms of being under the influence of a drug.

2. A pattern of abnormal conduct or erratic behavior.

3. Arrest or conviction for a drug related offense, or the identification of an employee as the focus of a criminal investigation into illegal drug possession, use, or trafficking.

4. Information provided either by reliable and credible sources or independently corroborated, or

5. Newly discovered evidence that the employee has tampered with a previous drug test.

The Plan provides that supervisors receive training to recognize facts which give rise to reasonable suspicion and requires that at least two supervisors concur in the ordering of a test.

Reasonable suspicion rests upon something demonstrated by the employee's own act or conduct and is therefore less intrusive than is random testing. *Cf. International Brotherhood of Electrical Workers, Local 1245 v. Skinner,* 913 F.2d 1454, 1464 (9th Cir.1990) (pre-employment and post-accident testing are less intrusive than random testing because they are triggered by a definable event or the employee's own act).

Language identical to that used in the Veterans Administration Plan was considered in *National Treasury Employees Union v. Yeutter,* 918 F.2d 968 (D.C.Cir. 1990), and reasonable-suspicion testing as therein outlined was held unconstitutional with respect to employees not occupying "safety-sensitive" positions because the reasonable-suspicion criteria were not confined to *on duty* drug use or drug impaired work performance.

Furthermore the "pattern of abnormal conduct or erratic behavior" contemplated by the second criterion is overbroad, in that it does not specify that the type of conduct or behavior be consistent with the use of drugs in a workplace setting. *American Fed. of Gov. Employees v. Sullivan,* 744 F.Supp. 294 (D.D.C.1990).

Accordingly, because the Plan as drawn does not distinguish between "ordinary employees" and occupants of "safety-sensitive positions," plaintiffs are entitled to summary judgment with respect to reasonable-suspicion testing, and defendants are enjoined from implementing reasonable-suspicion testing in its present form, except with respect to those employees who occupy "safety-sensitive" positions which this court has herein found to be subject to random testing.

## POST-ACCIDENT TESTING

██  The Veterans Administration Plan as amended provides

VA is committed to providing a safe and secure work environment. Employees who apparently cause on-the-job accidents or who engage in unsafe on-duty

job-related activities that pose a danger to others or the overall operation of VA may be subject to testing. Based on the circumstances of the accident or unsafe act, the immediate or higher level supervisor may initiate testing when:

1. An accident or unsafe act involves personal injury or death.
2. An accident or unsafe act results in more than $2000 damage.
3. The same employee has more than one accident or unsafe act during a twelve month period.

Drug tests ordered under this provision should be conducted as soon as possible after the accident or unsafe practice occurs.

Plaintiffs attack the amended standards on the grounds that:

1. The threshold standard is too low.
2. The testing is not limited to safety-sensitive employees, and is to be undertaken on a discretionary basis.

Plaintiffs point out also that the provision exempting "minor employee accidents or on-the-job injuries" has been eliminated from the Amended Plan.

The court agrees with plaintiffs that the standards as amended are not sufficiently certain as to the magnitude of a personal injury sufficiently grave to trigger a drug test. In *International Brotherhood of Teamsters v. Department of Transp.*, 932 F.2d 1292 (9th Cir.1991), the Ninth Circuit approved a standard which required, inter alia, "an injury demanding medical treatment away from the scene of an accident."

The instant standard leaves the decision with respect to the initiation of testing wholly in the hands of the immediate or higher supervisor, who shall decide whether "(t)he circumstances of the accident or unsafe act" justify testing. This leaves an impermissibly broad spectrum of the exercise of judgment, particularly with respect to the quantum of personal injury.

Accordingly, the court grants summary judgment to plaintiffs and enjoins and restrains defendants from enforcing post-accident testing in accordance with the standards as written.

## FOLLOW–UP TESTING

■ Defendants are entitled to summary judgment on this issue, and the preliminary injunction heretofore issued is dissolved with respect to follow-up testing.

The attack on this aspect of the Plan is mounted upon the assertion that the Plan permits unlimited testing in the undefined discretion of local administrators. This court's reading of the Plan reveals that the employee may be subject to unannounced testing either with the frequency provided for in the abeyance contract or at an increased rate of frequency at least six times per year. If the latter alternative is selected, the selection for testing is accomplished by means of a separate random pool. Since random testing is implemented under the Plan on a monthly basis, *Plan*, Section IX, E, the defendants are correct in their argument that the maximum number of times in a year that a given individual can be tested is twelve.

By its terms the Plan does not mandate unlimited follow-up testing at the unguided discretion of local administrators, but rather provides testing in accordance with the abeyance contract, or for testing between six and twelve times on a *random* basis for a period of one year, in addition to EAP testing.

The court finds that the Plan with respect to follow-up testing does not run counter to the Fourth Amendment by failure to provide sufficiently guiding and restrictive standards, particularly since frequency of testing between the minimum of six and the maximum of twelve is controlled not by the unilateral decision of an individual, but by a process of random selection.

## CIVIL SERVICE REFORM ACT

Defendants are entitled to summary judgment on the issue of whether the Plan violates the Civil Service Reform Act of 1978 and 5 U.S.C. § 2302(b)(10).

Plaintiffs argue that no court which has considered this issue has addressed the question of whether a positive urinalysis

result, of itself, supplies the required nexus between the employee's alleged misconduct and the efficiency of government service. 5 U.S.C. § 7513(a) (1976 & Supp. V 1981).

Whether that be so or not, this court is of the opinion that when and if a disciplinary question arises stemming from testing undertaken pursuant to the Plan, and remedy is sought pursuant to § 2302(b)(10), the question is more properly addressed in that factual context than now. This court can express no opinion based on the record in this case as to whether in every possible situation which may be factually presented the Plan conflicts or does not conflict with the CSRA, nor should it attempt to until a case or controversy is presented.

## CONCLUSION

Plaintiffs are entitled to summary judgment with respect to the random testing of employees listed in category IV of the listing of "safety-sensitive" positions (Exhibit to Sixth Declaration of Egan) except Automotive Mechanics, and defendants are permanently enjoined and restrained from randomly testing the occupants of such positions.

Defendants' motion for summary judgment on this issue is DENIED.

Plaintiffs are entitled to summary judgment with respect to reasonable-suspicion testing as set forth in the Plan as written insofar as it applies to employees not occupying "safety-sensitive" positions as the same are defined in this Memorandum, and defendants are permanently enjoined from subjecting occupants of such non-safety-sensitive positions to reasonable-suspicion testing as presently provided in the Plan.

Defendants' motion for summary judgment on this issue is DENIED.

Plaintiffs are entitled to summary judgment with respect to post-accident testing in the Plan as written, and defendants are permanently enjoined from subjecting employees to post-accident testing as presently provided in the Plan.

Defendants' motion for summary judgment on this issue is DENIED.

Defendants are entitled to summary judgment with respect to the random testing of all persons occupying positions listed in Categories I, II and III in the listing of "safety-sensitive" positions attached as an exhibit to the Sixth Declaration of Egan and with respect to occupants of the positions of Motor Vehicle Operator and Automotive Mechanic, which positions are listed in Category IV of said exhibit, and the preliminary injunction heretofore issued is dissolved and set aside with respect to all such positions.

Plaintiffs' motion for summary judgment is DENIED as to these positions.

Defendants are entitled to summary judgment with respect to follow-up testing as described in the Plan, and the preliminary injunction heretofore issued is dissolved and set aside as to follow-up testing.

Plaintiff's motion for summary judgment is DENIED with respect to follow-up testing.

Defendants are entitled to summary judgment with respect to contentions involving the Civil Service Reform Act and plaintiff's motion for summary judgment is DENIED as to those contentions.