S. Denise **GONZALEZ**, an individual; et al., Plaintiffs—Appellees,

v.

**METROPOLITAN TRANSPORTATION AUTHORITY**, aka Southern California Rapid Transit District; et al., Defendants—Appellants.

S. Denise Gonzalez, an individual; et al., Plaintiffs—Appellees,

v.

United States Department of Transportation; et al., Intervenors—Appellants,

**Metropolitan Transportation Authority, aka Southern California Rapid Transit District; et al., Defendants.**

Nos. 02–55037, 02–55045.
D.C. No. CV–96–02785–GHK.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 24, 2003.

Decided Aug. 25, 2003.

Babak Naficy, Fosbinder & Fosbinder, Venice, CA, James H. Fosbinder, Rhonda M. Fosbinder, Fosbinder and Fosbinder, Kahului, HI, for Plaintiffs–Appellees.

Sharon G. Sanders, Los Angeles County Counsel, Los Angeles, CA, for Defendants–Appellants/Defendants.

Lowell V. Sturgill, Jr., U.S. Department of Justice, Washington, DC, for Intervenor–Appellant.

Before BOOCHEVER, KLEINFELD, Circuit Judges, and TANNER, District Judge.*

***

\* The Honorable Jack E. Tanner, Senior United States District Judge for the Western District of Washington, sitting by designation.

### MEMORANDUM**

In 1996, Denise and Ruben Gonzalez, employees of the Los Angeles Metropolitan Transportation Authority ("MTA"), challenged the constitutionality of random drug and alcohol testing, seeking damages and declaratory and injunctive relief. The district court dismissed their complaint for failure to state a claim. We reversed and remanded. *Gonzalez v. MTA*, 174 F.3d 1016, 1020 (9th Cir.1999). On remand, the district court granted summary judgment for the Gonzalezes and entered a permanent injunction barring random drug testing of Denise or Ruben. (Their claims for declaratory relief and damages have been stayed in the district court pending this appeal.) The MTA and intervenors the United States Department of Transportation appealed. We review the district court's grant of summary judgment de novo, *see Biodiversity Legal Found. v. Badgley*, 309 F.3d 1166, 1175 (9th Cir. 2002), and we now reverse the district court's grant of summary judgment.

### I. *Mootness*

■ The MTA argued that Denise's request for injunctive relief was moot because she left her job with the MTA in 1997 and moved to Arizona, where she and Ruben bought a home in 2000 after selling their home in California. Ruben continues to work at the MTA and divides his time between Arizona and California. Denise testified that she would "definitely" return to her job and move back to Los Angeles to rent a home if her job became available to her and if the random drug testing were ruled unconstitutional. [ER p. 335] The

***

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

district court found that Denise's claim for injunctive relief was not moot. We review de novo, *see id.* at 1173, and we agree.

"[A] case is moot only where no effective relief for the alleged violation can be given." *Forest Guardians v. U.S. Forest Serv.,* 329 F.3d 1089, 1094 (9th Cir.2003). "The party asserting mootness has the heavy burden of establishing that there is no effective relief remaining for a court to provide." *Oregon Advocacy Center v. Mink,* 322 F.3d 1101, 1116–17 (9th Cir. 2003) (quotations omitted). Although it is close, we conclude that the MTA has not met that burden. Denise's sworn testimony is that she will return to California if she can work at the MTA without being subject to random drug testing. A permanent injunction against such testing would be effective relief as to Denise. The MTA relies on *Monahan v. Nebraska,* 687 F.2d 1164 (8th Cir.1982), but in that case the court found that a case regarding educational placement was moot where parents had sued on behalf of a child who had turned eighteen, married, left the defendant school district, and stopped attending school altogether. Her vague statement that she would return to the district to pursue her education, without an indication of when this would occur, made her return "speculative" and her case moot. *Id.* at 1168. In this case, Denise has unequivocally testified that she will move back to California and seek to return to her job if she will not be subject to random testing.

## II. *Random drug testing*

■ Federal regulations issued under the Omnibus Transportation Employee Testing Act of 1991, 49 U.S.C. § 5331, require random testing of mass transit employees in "safety-sensitive functions," including anyone who operates a "revenue service vehicle" such as a city bus, including when not in service, or who "[c]ontrol[s] dispatch or movement of a revenue service vehicle." 49 C.F.R. § 655.4. Under these regulations, the MTA tested Denise, a bus dispatcher, and her husband Ruben, a "transit operations supervisor/instructor." Our prior decision reversed the district court's dismissal of the Gonzalezes' challenge to the testing, and remanded their claim that the tests violated their rights under the Fourth Amendment, because we did not have sufficient information regarding what the Gonzalezes' jobs entailed or the effectiveness and privacy of the testing procedure. *See id.* at 1024.

On remand, the district court considered the three factors that must be balanced when evaluating "special needs" drug testing: (1) the nature of the privacy interest involved; (2) the character of the intrusion; and (3) the "nature and immediacy" of the government's need for testing and the efficacy of the testing for meeting it. *See Vernonia Sch. Dist. v. Acton,* 515 U.S. 646, 657–60, 115 S.Ct. 2386, 132 L.Ed.2d 564 (1995). The court found that Ruben had a slightly diminished expectation of privacy, although Denise did not, and that the tests were performed in the least obtrusive way possible and were quite reliable. The only remaining issue was whether the safety aspects of the Gonzalezes' jobs justified the intrusion on their Fourth Amendment rights.

It was not disputed that the Gonzalezes' job descriptions called for them to perform, or to be ready to perform, safety-sensitive duties, and the Gonzalezes do not argue that their job descriptions were inaccurate. Denise's dispatch duties included responding to emergencies and calling the police when necessary. Ruben was required to hold a commercial drivers' li-

cense with an endorsement allowing him to carry passengers, and to be prepared to drive a bus under a variety of circumstances. Nor was it disputed that they had been called upon to perform those duties in the past. Nevertheless, the court granted the Gonzalezes' cross-motion for summary judgment and granted the request for a permanent injunction against their testing, holding that because the Gonzalezes had only infrequently performed some of their safety-sensitive duties, their jobs had only a "minimal" impact on safety and the intrusion on Fourth Amendment rights could not be justified.

This result cannot be squared with our precedent. This court has upheld as constitutional random drug testing of employees who may be called upon to perform safety-sensitive tasks, regardless of frequency. In *Int'l Bhd. of Elec. Workers, Local 1245 v. United States Nuclear Reg. Comm'n*, 966 F.2d 521, 526 (9th Cir.1992) we upheld random testing of clerical workers in protected areas of a nuclear plant where their union could not establish that workers "did not engage in *any* safety-sensitive work" (emphasis added). It was enough that "at least some" of the workers entered vital areas and "may have safety-related responsibilities." *Id.* In *AFGE Local 1533 v. Cheney*, 944 F.2d 503, 506 (9th Cir.1991), we upheld the random testing of engineers who were required to hold top secret access clearances, even though they might not ever actually handle classified information. "Holding the security clearance provides access enough.... Considerations of other characteristics of the employees' jobs, including the frequency with which the employees are likely to be exposed to classified information, are irrelevant." *Id.* at 506, 509.

The government has a compelling interest in "ensuring the sobriety and fitness of operators of dangerous instrumentalities or equipment." *Int'l Bhd. of Teamsters v. Dept. of Transp.*, 932 F.2d 1292, 1304 (9th Cir.1991) (upholding random drug testing of commercial truck drivers); *see also Bluestein v. Skinner*, 908 F.2d 451, 457 (9th Cir.1990) (upholding FAA regulations requiring random drug testing of flight instructors and dispatchers); *Int'l Bhd. of Elec. Workers, Local 1245 v. Skinner*, 913 F.2d 1454, 1458 (9th Cir.1990) (upholding random testing of all employees engaged in operations, maintenance, or emergency response functions on gas pipelines).

We have never found random drug testing of employees who perform safety-sensitive functions to be unconstitutional. The Gonzalezes admit that their job descriptions require them to be prepared to perform safety-sensitive functions, and admit that they have performed safety-sensitive functions in the past. They nevertheless argue that their job history shows that they seldom performed these functions, and that therefore they cannot constitutionally be tested. As we said in *Cheney*, however, frequency is irrelevant. *See* 944 F.2d at 509. This is particularly true when we are asked to examine an individual worker's job history. The Gonzalezes sought an injunction against future testing, based on the infrequency of their past safety-sensitive activity. But past experience does not determine whether an employee may be called upon to perform a vital safety function more often in the future. Denise may encounter more frequent emergencies requiring her dispatch services; Ruben may be required to drive a bus more often. If an injunction were in place, neither could be tested regardless of how much of an impact their job duties had on public safety.

The district court also concluded that Denise's work conditions kept her around

other workers and under a supervisor, so that any drug or alcohol use would be readily observable without testing. We have held, however, that " 'The heavy supervision of workers does not negate the need for other mechanisms to prevent accidents.' " *IBEW v. USNRC*, 966 F.2d at 527 (quoting *IBEW v. Skinner*, 913 F.2d at 1460 n. 14).

The Gonzalezes also argue that there is no evidence of a drug or alcohol problem in the transit industry. The Supreme Court, however, "has not required a particularized or pervasive drug problem before allowing the government to conduct suspicionless drug testing." *Bd. of Ed. of Ind. Sch. Dist. No. 92 v. Earls*, 536 U.S. 822, 835, 122 S.Ct. 2559, 153 L.Ed.2d 735 (2002).

We reverse the grant of summary judgment, and we remand to the district court to grant summary judgment in favor of the MTA on the Gonzalezes' claims for injunctive and declaratory relief and damages.

REVERSED AND REMANDED.

KLEINFELD, Circuit Judge, dissenting.

I respectfully dissent.

In response to our remand of Mr. and Mrs. Gonzalez's cases, the district court did exactly what we asked it to do: it carefully balanced the search's intrusion on the individuals' Fourth Amendment interests against the search's promotion of legitimate governmental interests.[1] The district court ultimately determined that the random drug testing was unreasonable

as applied to these two individuals, and thus violated their Fourth Amendment rights. The question is close, but I would accept the measured judgment of the district court.

As a dispatcher for the MTA, Mrs. Gonzalez had no lowered expectation of privacy, and her position could hardly be called "safety-sensitive." Buses do not fly, so even though she may give directions, there is not the kind of safety risk that there would be if she were an air traffic controller. She sits in a room with other people and answers phone calls. As for receiving calls, only three or four times in 17 years did she have to respond to any kind of emergency. When an emergency did occur, her sole responsibility was to call the police or ambulance. In this function, her work is no more safety sensitive than that of a desk clerk at a hotel or a receptionist at an office. Additionally, she worked in a room full of other dispatchers who would likely see the effects of drug abuse and be able to step in during an emergency, if needed.

Although a closer case, Mr. Gonzalez's job as a bus driver supervisor similarly lacks the kind of impact on safety needed to justify the intrusion of a random drug test. He sits at a desk and works with paper, as we do. When he drives MTA vehicles, he does so in order to get to job sites or test equipment, not to carry passengers. His job description calls for him to be prepared to drive a bus under a variety of circumstances, but he has almost never been required to do so during his lengthy career with the MTA. As a prac-

---

1. As we instructed, the district court considered the following factors: "(1) the nature of the privacy interest upon which the search intrudes; (2) the character of the intrusion; (3) the immediacy of the government concern

and the efficacy of the search for meeting it." *Gonzalez v. Metro. Transp, Auth.*, 174 F.3d 1016, 1021–22 (9th Cir.1999) (citing *Vernonia Sch. Dist. v. Acton*, 515 U.S. 646, 654–64, 115 S.Ct. 2386, 132 L.Ed.2d 564 (1995)).

tical matter, his job is no more safety sensitive than the general run of administrative jobs.

We have upheld random drug testing of employees who *may* be called upon to perform safety-sensitive tasks, despite a lack of frequency, but only where the level of dangerousness was extraordinarily high. In *International Brotherhood of Electrical Workers, Local 1245 v. United States Nuclear Regulatory Commission,* we upheld drug testing of all clerical workers at a nuclear power plant based on the workers' diminished expectation of privacy in a heavily-regulated industry, the catastrophic nature of accidents that could occur at a nuclear plant, and "our inability to distinguish between those clerical workers who pose a real threat to public safety and those who do not."[2] Likewise, in *AFGE Local 1533 v. Cheney,* we held that engineers working for the Navy who were subject to random testing had a diminished expectation of privacy because of the intrusion they faced in the extensive background check required to get top secret clearance.[3] This lowered privacy interest justified an intrusion even where the engineers were unlikely to access top secret information. We held that "a person with a top secret clearance generates sufficiently grave potential risk to national security to make the decision to conduct random urinalysis testing reasonable *regardless of any other attendant circumstances.*"[4]

These cases do not mean, however, that infrequency is irrelevant in every case; it is merely one consideration in the balancing test. The unlikelihood that the Gonzalezes will be required to do something that impacts public safety is particularly relevant here for the lack of other reasons justifying an intrusion into their privacy.

Although the MTA has a legitimate interest in testing employees in safety-sensitive positions, we must guard against so lax an interpretation of "safety sensitive" that *all* employees of all kinds can, by reasons of expansive but largely imaginary job descriptions, be required to urinate for testing. I agree with the district court that the record demonstrates that *these particular* MTA employees are not situated to pose a substantial immediate threat to public safety. Bus dispatchers and administrators pose no risk of nuclear meltdowns or national intelligence breach.

Like the district court below, I would hold that the expectation of privacy that the Gonzalezes have in their jobs is not outweighed by the slight impact their jobs could have on public safety, and that random drug testing violates their Fourth Amendment rights.

---

**2.** 966 F.2d 521, 525–26 (9th Cir.1992).

**3.** 944 F.2d 503, 505, 507 (9th Cir.1991).

**4.** *Id.* at 506 (citations omitted) (emphasis in original).