**Sandra M. THOMSON; George Stout, Plaintiffs–Appellees,**

**v.**

**John O. MARSH, Jr., Secretary of the Army; Major–General Charles F. Drenz, Commander, Brigadier Gen. Peter D. Hildalco, Commander, U.S. Army; Frank Carlucci, Secretary of Defense, Defendants–Appellants.**

No. 88–2838.

United States Court of Appeals, Fourth Circuit.

Argued May 8, 1989.

Decided July 6, 1989.

---

Robert V. Zener (John R. Bolton, Asst. Atty. Gen., Breckinridge L. Willcox, U.S. Atty., Leonard Schaitman, Washington, D.C., on brief), for defendants-appellants.

Lawrence S. Greenwald (Dana A. Reed, Gordon, Feinblatt, Rothman, Hoffberger & Hollander, Baltimore, Md., on brief), for plaintiffs-appellees.

Before WINTER, PHILLIPS, and MURNAGHAN, Circuit Judges.

PER CURIAM:

This appeal presents the question of whether the Fourth Amendment to the Federal Constitution prohibits the United States Army from performing random drug tests on certain civilian employees at a chemical weapons plant. The district court held that such tests violated that Amendment's guarantee against unreasonable searches and seizures. 682 F.Supp. 829. While this appeal was pending, the Supreme Court upheld the constitutionality of random drug tests in *Skinner v. Ry. Labor Executives Ass'n,* — U.S. ——, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989) and *National Treasury Employees Union v. Von Raab,* — U.S. ——, 109 S.Ct. 1384, 103 L.Ed.2d 685 (1989). In light of these decisions, we conclude that the tests at issue here do not violate the Fourth Amendment. We reverse the judgment of the district court and remand the case with directions to dismiss the complaint.

I.

Plaintiffs Sandra M. Thomson and George Stout are civilian employees of the Army who work at Aberdeen Proving Grounds in Maryland. Thomson is a research biochemist with the Army's Chemical Research Development Engineering Center (CRDEC). Stout is a pipefitter. Because Thomson and Stout both have access to areas at Aberdeen in which experiments are performed with highly lethal chemical warfare agents, they have received security clearances and been placed in the Army's Chemical Personnel Reliability Program (CPRP), a group consisting of employees whose work involves chemical weapons.

The Army requires that persons assigned to the CPRP submit to random drug tests, which it conducts in compliance with guidelines promulgated by the Department of Health and Human Services (HHS). An employee selected for testing gives a urine sample during the course of a work day at a collection site. The specimen is sent to a laboratory, where tests are conducted for evidence of illegal drugs. If the tests are positive and there is no legitimate medical explanation for the results, the employee may be subject to disciplinary action, including demotion or dismissal. Test results may not be used in a criminal prosecution of the employee unless he consents.

Thomson and Stout refused to submit to drug tests and filed suit in the district court seeking declaratory and injunctive relief. The district court concluded that the Army program violated the Fourth Amendment and granted plaintiffs' request for a permanent injunction. This appeal followed.

II.

In *Railway Labor Executives* and *Treasury Employees,* the Supreme Court decided that random drug tests do not violate the Fourth Amendment in limited circumstances where important governmental in-

terests outweigh individuals' expectations of privacy. In *Treasury Employees*, the Court applied this balancing test to uphold a Customs Service program conducted under the same HHS guidelines as those involved here. We think that these decisions, particularly *Treasury Employees*, control the outcome of this appeal. We hold that the governmental interest in safety at Aberdeen clearly outweighs plaintiffs' expectations of privacy, and that the drug tests at issue in this case do not violate the Fourth Amendment.

It is manifest that the government's interest in the safety of the workplace at Aberdeen is a compelling one. Like the railroad employees in *Railway Labor Executives*, Army employees whose work involves chemical weapons "discharge duties fraught with such risks of injury to others that even a momentary lapse of attention can have disastrous consequences." *Railway Labor Executives*, —— U.S. at ——, 109 S.Ct. at 1419. The chemical agents in use at Aberdeen—"nerve agents," "blister agents," and "blood agents"—are extremely lethal. To cite only one example from many in the record, if an employee working with the agent "CK" released merely a "small amount" of the chemical in a "large room," he would kill everyone within a few feet and seriously injure all those within a few yards.

By contrast, plaintiffs' expectations of privacy are of much lesser magnitude. The nature of their responsibilities is such that neither Thomson nor Stout can justifiably expect to keep from their superiors personal information regarding the use of illegal drugs. *See Treasury Employees*, —— U.S. at ——, 109 S.Ct. 1394. Thomson's experiments do not at present involve chemical warfare agents, but she is a member of a pool of CRDEC scientists who may be called on at any time to participate in such experiments. Indeed, Thomson concedes in her brief that in the absence of a branch chief she may even supervise individuals working with toxic chemicals. As for Stout, his duties as a pipefitter include the maintenance and construction of steam-fittings for chemical test chambers and toxic waste drains. The record indicates that Stout has access to laboratories where experiments with chemical weapons are conducted and that he might be required to respond to emergencies in those laboratories.

Like the Customs officers in *Treasury Employees*, then, plaintiffs in this case enjoy only diminished expectations of privacy by virtue of the "special" and "obvious" demands of their positions. *See id.* at ——, 109 S.Ct. at 1397. Moreover, as members of the CPRP, Thomson and Stout have been required to take annual physicals, administered by Army doctors, that include both blood and urine tests. That plaintiffs have been subject to this requirement, as well as to extensive background checks before even receiving CPRP clearance, serves to lessen their expectations of privacy in respect of a urinalysis test. *See id.* at ——, 109 S.Ct. at 1397. Finally, as the Court observed in *Treasury Employees*, the HHS guidelines to which the Army's testing program conforms "significantly minimize" the program's intrusiveness. *See id.* at —— n. 2, 109 S.Ct. at 1394 n. 2.

Because the government's compelling interest in the safety of the workplace at Aberdeen outweighs plaintiffs' justifiable expectations of privacy, the Army drug testing program passes muster under the Fourth Amendment. The judgment of the district court is therefore reversed. We remand the case with directions to dismiss the complaint.

REVERSED AND REMANDED.