**RAILWAY LABOR EXECUTIVES' ASSOC.; Brotherhood of Locomotive, et al., Plaintiffs–Appellants,**

v.

**Samuel K. SKINNER; John H. Riley, et al., Defendants–Appellees.**

No. 89–16571.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 20, 1990.

Submission Deferred May 1, 1990.

Resubmitted June 6, 1991.

Decided June 11, 1991.

---

Lawrence M. Mann, Alper & Mann, Washington, D.C., for plaintiffs-appellants.

Lowell V. Sturgill, Jr., Civil Div., U.S. Dept. of Justice, Washington, D.C., for defendants-appellees.

Before BEEZER, KOZINSKI and O'SCANNLAIN [*], Circuit Judges.

BEEZER, Circuit Judge:

The Railway Labor Executives' Association ("RLEA") appeals the district court's order granting summary judgment to the Secretary of Transportation. RLEA argues that the Federal Railroad Administration's ("FRA") recently promulgated random drug testing regulations, 49 C.F.R. §§ 219.601–605 (1989), require unreasonable searches in violation of the fourth amendment. It also maintains that the new regulations violate the separation of powers doctrine because they do not fall within the FRA's statutory authority. Finally, RLEA contends that the FRA lacked the authority to delegate to private railroads the power to conduct random drug testing. We affirm.

[*] Judge Diarmuid F. O'Scannlain has been drawn to replace Judge Robert C. Bonner. He has read the briefs, reviewed the excerpts of record and listened to the tape of oral argument held on April 20, 1990.

1. The FRA's regulations require random drug testing of Hours of Service employees. 49 C.F.R. § 219.5 (1989) ("covered employee" means a person who has been assigned to perform service subject to the Hours of Service Act (45 U.S.C. §§ 61–64 (1982))). The Supreme Court has explained that "hours of service employees covered by the FRA regulations include

I

The parties ask us to decide whether random drug testing of railroad workers in safety-sensitive positions [1] violates the fourth amendment. The Supreme Court recently decided two drug testing cases that establish the analytical framework for resolving this constitutional question. *See Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. 602, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989) ("*RLEA I*"); *National Treasury Employees Union v. Von Raab*, 489 U.S. 656, 109 S.Ct. 1384, 103 L.Ed.2d 685 (1989) ("*Von Raab*"). We recently applied these decisions in *Bluestein v. Skinner*, 908 F.2d 451 (9th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 954, 112 L.Ed.2d 1042 (1991).

*RLEA I* involved the same parties to this appeal. In that case, the Supreme Court examined regulations authorizing drug tests for employees involved in train accidents or safety rule violations. *See* 49 C.F.R. §§ 219.201, 219.301 (1989). Reversing our decision in *Railway Labor Executives' Ass'n v. Burnley*, 839 F.2d 575 (9th Cir.1988), the Court held that the regulations did not violate the fourth amendment.

RLEA argues that the Supreme Court's decision in *RLEA I* does not control the outcome of this case. The regulations analyzed there allowed railroads to test for drugs only after the occurrence of some "triggering event," namely, an accident or safety rule violation. 489 U.S. at 630, 109 S.Ct. at 1420. RLEA contends that the new regulations infringe upon fourth amendment rights because they authorize *random* drug testing. *See* 49 C.F.R. § 219.601 (1989).

persons engaged in handling orders concerning train movements, operating crews, and those engaged in the maintenance and repair of signal systems. It is undisputed that these and other covered employees are engaged in safety-sensitive tasks. The FRA so found, and respondents conceded the point at oral argument." *Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. 602, 620, 109 S.Ct. 1402, 1414, 103 L.Ed.2d 639 (1989) (citation omitted). RLEA does not challenge the government's contention in this case that the random drug testing regulations only apply to employees in safety-sensitive positions.

Although *RLEA I* did not address the constitutionality of random drug testing, it did resolve some issues relevant to this appeal. The Court held that urinalysis compelled by the government constitutes a "search" subject to the restrictions of the fourth amendment. 489 U.S. at 617, 109 S.Ct. at 1412. It explained that the reasonableness of a search should be determined "by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests." *Id.* at 619, 109 S.Ct. at 1414 (citation omitted).

The Court noted that excretory functions are traditionally shielded by great privacy, but it explained that the regulations [2] attempt to reduce the intrusiveness of the collection process. *Id.* at 626, 109 S.Ct. at 1417. The regulations do not require direct observation by a monitor. *Id.* Furthermore, they provide that testing be done in a medical environment, resembling a regular physical exam. *Id.* at 626–27, 109 S.Ct. at 1417–18. Most importantly, the Court concluded that the employees' expectation of privacy is diminished by "their participation in an industry that is regulated pervasively to ensure safety." *Id.* at 627, 109 S.Ct. at 1418. For all these reasons, the Court characterized the threat to employees' justifiable expectations of privacy as "minimal." *Id.* at 624, 109 S.Ct. at 1416.

The Court held that the government's interest in railroad safety is compelling and presents a " 'special need' beyond normal law enforcement that ... justif[ies] [a] departure[ ] from the usual warrant and probable-cause requirements." *Id.* at 620, 109 S.Ct. at 1414 (quoting *Griffin v. Wisconsin*, 483 U.S. 868, 873–74, 107 S.Ct. 3164, 3168–69, 97 L.Ed.2d 709 (1987)). *See also O'Connor v. Ortega*, 480 U.S. 709, 721–25, 107 S.Ct. 1492, 1499–502, 94 L.Ed.2d 714 (1987) (plurality) (special need for work-related searches of employees' desks and offices); *New Jersey v. T.L.O.*, 469 U.S. 325, 337–342, 105 S.Ct. 733, 740–43, 83 L.Ed.2d 720 (1985) (special need for search of student's property by school officials). Balancing individual and governmental interests, the Court concluded that the fourth amendment does not require the government to have individualized suspicion of drug use before forcing an individual to submit to urinalysis after an accident or safety rule violation. *RLEA I*, 489 U.S. at 624, 109 S.Ct. at 1416. The Court explained that requiring individualized suspicion would frustrate the government's compelling interest in maximizing safety because drug use is difficult to detect by observation. *Id.* at 631, 109 S.Ct. at 1420.

■ RLEA first argues that the fourth amendment requires at a minimum a triggering event, like an accident or safety rule violation, to justify a search. Alternatively, RLEA maintains that under the Supreme Court's fourth amendment balancing inquiry, the balance for random drug testing comes out in favor of employees' privacy rights.

RLEA contends that the Court's balancing in *RLEA I* did not sanction a "no suspicion" standard. Although *RLEA· I* did not require individualized suspicion for drug testing, the regulations at issue there permitted drug testing only after the occurrence of a triggering event. When an employee violates a safety rule or is involved in an accident, there is some reason to believe that he or she may have been under the influence of drugs. Random testing is not premised upon a safety-related triggering event. RLEA argues that there is no close nexus between the invasion of fourth amendment interests under the new regulations and the government's interest in safety.

We do not agree with RLEA that the fourth amendment requires that searches

---

**2.** Apart from the random nature of the testing, RLEA does not argue that the method of obtaining urine samples under the random drug testing regulations differs in a constitutionally meaningful sense from the urinalysis procedure discussed by the Supreme Court in *RLEA I*, 489 U.S. at 626, 109 S.Ct. at 1417. Although the FRA has amended the regulations governing the method of obtaining urine samples discussed in *RLEA I, see* 49 C.F.R. §§ 40, 219.701 (1989), RLEA has not argued that the privacy aspects of the regulatory procedure discussed by the Supreme Court have been altered substantially by the FRA's newer regulations, *see* especially *id.* § 40.25(a), (e) (1989) (privacy aspects of newer regulations), which apply to both testing triggered by safety-related events and random testing.

be premised upon a safety-related triggering event in this case. Suspicionless searches can be constitutional. The Supreme Court did not require a safety-related triggering event in *Von Raab.* 489 U.S. 656, 109 S.Ct. 1384. The *Von Raab* Court held that the government could require urine samples from Customs employees who apply for promotions involving drug interdiction or the use of firearms. The triggering event in *Von Raab,* the act of seeking a promotion, was unrelated to safety. In fact, the Supreme Court said that the government could test Customs employees for drugs even though the government had no reason to believe that Customs employees used drugs. *Id.* at 668, 109 S.Ct. at 1391–92.

RLEA maintains that, even if searches not premised on safety-related triggering events can pass constitutional muster, employees' interests under random testing outweigh governmental interests. The new regulations infringe upon fourth amendment rights more than the regulations in *RLEA I.* Instead of authorizing bodily fluid searches only after the relatively rare occurrence of an accident or safety rule violation, the new regulations ensure that every employee apprehends the threat of testing each working day. *See* 49 C.F.R. § 219.601(b)(3) (1989). Under the new regulations, one half of the relevant workforce will be randomly tested each year. *Id.* § 219.601(b)(2). The Federal Railroad Administration purposely adopted the more intrusive random testing regulations to provide a greater deterrent to drug and alcohol use.

The government counters that any increased intrusion on the privacy interests of employees is more than offset by enhanced safety. Having solicited comments on the ability of random testing to reduce the use of controlled substances, the FRA noted that the commenters were "nearly unanimous in their appraisal of the deterrent effect of random testing." *See* 53 Fed.Reg. 47,106 (1988). The Secretary of Transportation argues at great length that

random testing is necessary because limiting drug testing to triggering events has not reduced accidents enough.[3] We note that the Supreme Court in *RLEA I* showed a willingness to defer to FRA safety judgments when it declined to "second-guess the reasonable conclusions drawn by the FRA after years of investigation and study." *RLEA I,* 489 U.S. at 629 n. 9, 109 S.Ct. at 1419 n. 9.

Faced with a similar problem involving random drug testing in the airline industry, we recently held that safety interests outweigh the privacy interests of employees. *See Bluestein,* 908 F.2d 451. The regulations in *Bluestein,* like the ones in this case, required random, unannounced testing of half the workforce each year. *Id.* at 453. We upheld the regulations nonetheless, reasoning that although the fact that testing was random and unannounced added "some weight to the invasion of privacy side of the Fourth Amendment balance," it was "insufficient to tip the scales against the . . . drug testing program." *Id.* at 457 (quotations omitted); *see also International Brotherhood of Teamsters v. Dept. of Transp.,* 932 F.2d 1292 (9th Cir. 1991) (upholding Federal Highway Administration regulations requiring random drug testing of commercial vehicle operators). We can find no principled distinction between the regulations in *Bluestein* and the ones challenged here.

Several other circuit courts have also upheld random drug testing since the Supreme Court's decisions in *RLEA I* and *Von Raab. See, e.g., Taylor v. O'Grady,* 888 F.2d 1189, 1198–99 (7th Cir.1989) (upholding random urinalysis of certain employees in state jail); *American Fed'n of Gov't Employees v. Skinner,* 885 F.2d 884, 891 (D.C.Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 1960, 109 L.Ed.2d 321 (1990) (upholding Department of Transportation's random urinalysis plan); *Transport Workers' Union v. Southeastern Pa. Transp. Auth.,* 884 F.2d 709, 713 (3d Cir.1989) (upholding random testing of mass transit employees); *Thomson v. Marsh,* 884 F.2d 113,

---

**3.** The government argues that between January 1987 and August of 1988, there were 54 accidents in which one or more employees tested positive for unauthorized use of controlled sub- stances. Thirty-two people died in those accidents, 857 people were injured, and more than $33 million in railroad property was destroyed.

115 (4th Cir.1989) (upholding random drug testing of Army employees working with chemical weapons); *Harmon v. Thornburgh,* 878 F.2d 484, 486 (D.C.Cir.1989), *cert. denied,* — U.S. ——, 110 S.Ct. 865, 107 L.Ed.2d 949 (1990) (upholding the Department of Justice's random drug testing plan for employees holding top secret national security clearances); *Guiney v. Roache,* 873 F.2d 1557, 1558 (1st Cir.), *cert. denied,* — U.S. ——, 110 S.Ct. 404, 107 L.Ed.2d 370 (1989) (upholding random drug testing of Boston Police Department employees required to carry firearms or involved in drug interdiction). Bound by the Supreme Court's decisions in *RLEA I* and *Von Raab* and our previous decision in *Bluestein,* we conclude that the FRA's random drug testing regulations do not unconstitutionally infringe upon the privacy interests of employees.

### II

RLEA also contends that the FRA's random drug test regulations violate the separation of powers doctrine because they allow the executive branch to usurp legislative power. Although Congress generally cannot delegate legislative power to another branch, it can constitutionally delegate rule-making power to the executive when it lays down an "intelligible principle" by statute to guide the executive. *See Mistretta v. United States,* 488 U.S. 361, 372, 109 S.Ct. 647, 654, 102 L.Ed.2d 714 (1989). The intelligible principle authorizing the FRA to promulgate random drug testing as a safety measure can be found in 45 U.S.C. § 431(a) (the Secretary of Transportation can promulgate "appropriate rules, regulations, orders, and standards for all areas of railroad safety"). We believe the FRA's random drug testing regulations do not violate the separation of powers doctrine. *See Amalgamated Transit Union v. Skinner,* 894 F.2d 1362, 1372 & n. 9 (D.C.Cir.1990) (the FRA's random drug testing regulations do not violate separation of powers because FRA has direct regulatory authority) (dicta).

### III

Finally, RLEA contends that the FRA did not have the power to require private railroads to implement random drug testing. We have already held that the FRA had power to promulgate regulations requiring private railroads to test employees for drugs after accidents or safety rule violations. *Burnley,* 839 F.2d at 590, *rev'd on other grounds sub nom. Skinner v. Railway Labor Executives' Ass'n,* 489 U.S. 602, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989). We explained that "45 U.S.C. § 437(a) authorizes the Secretary to delegate to any qualified persons functions respecting examination, inspection and testing of persons as necessary to carry out the provisions of that subchapter." *Id.* The FRA can therefore delegate to private railroads the power to conduct random "testing of employees."

### IV

We agree with the district court's decision that the FRA's random drug testing regulations do not violate the fourth amendment, that they do not violate the separation of powers doctrine, and that they do not unlawfully delegate authority to private railroads.

AFFIRMED.