**BROTHERHOOD OF MAINTENANCE OF WAY EMPLOYEES Chicago and North Western System Federation, David C. Otis, Earl E. Ewoldt, Thomas D. Cook, and Robert W. Hallady, Appellants,**

v.

**CHICAGO AND NORTH WESTERN TRANSPORTATION COMPANY, Appellee.**

**Dan R. MENTER and Harlan E. Smith, Appellants,**

v.

**CHICAGO AND NORTH WESTERN TRANSPORTATION COMPANY, Appellee.**

**Stanley W. WOLDEIER, Clifford H. Gildea, Ronald R. Scarberry, and Brotherhood of Maintenance of Way Employees Chicago and North Western System Federation, Appellants,**

v.

**CHICAGO AND NORTH WESTERN TRANSPORTATION COMPANY, Appellee.**

No. 92–2079.

Supreme Court of Iowa.

March 23, 1994.

As Amended on Denial of Rehearing April 20, 1994.

Harry W. Zanville of Zanville and Zimmermann, Waterloo, for appellants.

Bruce E. Johnson of Gamble & Davis, P.C., Des Moines, for appellee.

Considered by McGIVERIN, C.J., and HARRIS, CARTER, SNELL, and ANDREASEN, JJ.

CARTER, Justice.

■ Railway employees and railway employees' union appeal from the dismissal, on federal law preemption grounds, of their efforts to enjoin implementation of their employer's drug testing policies. We affirm the judgment of the district court, albeit for somewhat different reasons than that court advanced.

All of the individual plaintiffs are employees of defendant, Chicago and North Western Transportation Company (CNW), and members of plaintiff Brotherhood of Maintenance of Way Employees Chicago and North Western System Federation (BMWE). Plaintiffs allege that they are entitled to protections contained in Iowa Code section 730.5 (1991) regarding the drug testing of employees or applicants for employment. They argue that they have been illegally required to submit to drug testing under policies of CNW that are prohibited by section 730.5. They assert that, as a result, they either face disciplinary procedures or have been otherwise damaged in their employment.

Plaintiffs Waldeier, Gildea, and Scarberry were tested and subsequently discharged from employment due to having tested positive for the presence of alcohol. They were all first-time substance abuse violators and were not given an alternative test opportunity.

Plaintiffs Smith and Menter were chemically tested in Nebraska after an incident that took place five miles west of the Iowa–Nebraska border. Both were first-time violators, and both were discharged after test results were determined to be positive for the presence of prohibited substances.

Plaintiffs Otis, Ewoldt, Cook, and Hallady were required to pass a medical examination prior to being returned to service from furlough status. Each was required to submit to a year-end drug screening as part of the examination. None of these plaintiffs tested positive for drugs or alcohol. They claim they were economically damaged due to the delay in returning to work as a result of the amount of time required to do the drug and alcohol screening.

CNW has had rules in place, in one form or another, regarding drug and alcohol testing since at least 1910. These rules were originally identified as Rule H, and are now known as Rule G. Rule G has been continually amended and modified through the years. On March 17, 1987, CNW adopted its alcohol and drug use policy (ADU), which described the methods that CNW would use

to enforce its rules and policies regarding prohibited alcohol and drug use.

In 1991, the three groups of plaintiffs separately filed the claims involved on this appeal. After answers were filed by CNW and limited discovery was conducted, the cases were consolidated and submitted for decision to the district court upon cross-motions for summary judgment. The defendant carrier's motion was based on preemption grounds. The district court granted that motion, concluding that it lacked subject matter jurisdiction because the employee's claims are inextricably linked with an area of compulsory arbitration under the Railway Labor Act, 44 Stat. 577, as amended, 45 U.S.C. §§ 151–188 (R.L.A.). The district court did not rule on an alternative theory of preemption contained in CNW's motion for summary judgment, *i.e.*, that federal drug testing regulations, issued pursuant to authority granted the Secretary of Transportation by 45 U.S.C. § 431, preempt the application of state law limitations on employer drug testing.

The appellant-employees urge that the district court's theory of preemption based on the R.L.A. is fatally flawed. Most specifically, they urge that the present dispute fails to meet an essential requirement for R.L.A. preemption laid down in *Consolidated Rail Corp. v. Railway Labor Executives' Association*, 491 U.S. 299, 109 S.Ct. 2477, 105 L.Ed.2d 250 (1989) (*Conrail*). In *Conrail*, a railway employees' labor union challenged the carrier's right to uniformly impose urinalysis drug screening on employees in periodic and return-from-leave physical examinations. The parties agreed that this was a labor dispute subject to the R.L.A. but disagreed as to whether it was a "minor dispute," calling for compulsory arbitration, or a "major dispute," calling for a lengthy bargaining and mediation process. In stating the requirements for a dispute subject to the compulsory arbitration standards of the R.L.A., the Court declared:

> [T]he line drawn ... looks to whether a claim has been made that the terms of an existing agreement either establish or refute the presence of a right to take the disputed action. The distinguishing feature of such a case is that the dispute may

be conclusively resolved by interpreting the existing agreement.

*Id.* at 305, 109 S.Ct. at 2482, 105 L.Ed.2d at 263. The *Conrail* Court concluded that the drug testing dispute in that case was a minor dispute subject to compulsory arbitration under the R.L.A. No claim had been presented in that case, however, involving legal rights, whose source was outside of a collective bargaining agreement. The only issue presented had been whether the existing collective bargaining agreement did or did not authorize the carrier's drug testing policy.

Appellants urge that their challenge to the carrier's right to take the disputed action is based exclusively on a state statute that operates independently of and without regard to any existing collective bargaining agreement. For this reason, they claim that the issue of whether the carrier's action was unlawful may not be conclusively resolved by interpretation of the existing collective bargaining agreement. This argument finds considerable support in *Davies v. American Airlines, Inc.*, 971 F.2d 463 (10th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 2439, 124 L.Ed.2d 657 (1993). In *Davies*, a United States Court of Appeals, in applying *Conrail*, held that it precluded an R.L.A. forum-preemption defense to a retaliatory-discharge claim based on Oklahoma law. The basis for this ruling was the court's conclusion that the state law claim existed outside of the collective bargaining agreement and could be decided without interpreting that agreement. Obviously, the situation in *Davies* bears a substantial similarity to the present dispute on the question of R.L.A. preemption of state law claims.

The district court accurately stated the *Conrail* test in its ruling, but then, without explanation, broadened that test so as to require compulsory R.L.A. arbitration wherever the circumstances surrounding the claim are inextricably intertwined with subject matter dealt with in a collective bargaining agreement. CNW urges that this broad test is correct and seeks to support it by the decisions of lower federal courts antedating *Conrail*. We have considerable difficulty in accepting this broader standard because to do so would ignore the clear meaning of the

language employed by the Supreme Court in its most recent consideration of this issue.

█ We do not find it necessary to hold directly on the validity of the district court's R.L.A. preemption theory in order to decide this appeal. We ordinarily will affirm a district court ruling in which any proper basis appears for doing so, even though our reason is not the one upon which the district court based its holding. *Citizens First Nat'l Bank v. Hoyt*, 297 N.W.2d 329, 332 (Iowa 1980); *General Motors Acceptance Corp. v. Keil*, 176 N.W.2d 837, 841–42 (Iowa 1970); *Schnabel v. Vaughn*, 258 Iowa 839, 845, 140 N.W.2d 168, 172 (1966).

We have previously stated the alternative preemption argument contained in CNW's motion for summary judgment. Unlike its contention for preemption under the R.L.A., which is a forum-preemption theory, the alternative argument is one of "field preemption," which addresses whether Congress has explicitly or implicitly (by pervasive and comprehensive regulation) precluded states from regulating a particular area of conduct. *See Davies*, 971 F.2d at 465.

CNW's alternative theory in its motion for summary judgment was that federal regulations issued by the Secretary of Transportation, pursuant to the authority of federal statute (45 U.S.C. § 431), preempt the field of employee drug testing by rail carrier employers. Appellants urge that they are maintenance of way employees, who are not subject to the federal drug testing requirements that exempt federally regulated employers from section 730.5(2). This federal law preemption issue must be distinguished from the issue of statutory interpretation involving the language in section 730.5(2). The legislature in excepting certain categories of federally regulated employees from the provisions of the statute could limit that exception as it chose. Its decision in that regard is of slight consequence in determining whether the federal regulatory scheme for employee drug testing in the railroad industry, as authorized by Congress, was intended to occupy the field of regulation in that particular area.

Federal preemption is a doctrine that is shaped by federal law. Explicit preemption occurs if Congress expressly indicates that it intends to preempt state law. *Morales v. Trans World Airlines, Inc.*, 504 U.S. ——, ——, 112 S.Ct. 2031, 2036, 119 L.Ed.2d 157, 167 (1992). Preemption may also be implied if it can be determined that Congress intended to occupy the entire field to the exclusion of the states. *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 209, 105 S.Ct. 1904, 1910, 85 L.Ed.2d 206, 213–14 (1985). Implicit preemption is most likely found to exist in situations in which state law would conflict with or frustrate Congressional policy. *CSX Transp., Inc. v. Easterwood*, 507 U.S. ——, ——, 113 S.Ct. 1732, 1737, 123 L.Ed.2d 387, 396 (1993).

Appellants urge that Congress, in exempting maintenance of way employees from the Hours of Service Act, 45 U.S.C. §§ 61–64b, in effect elected to exempt those employees from the federal drug testing regulations applicable to other railway workers. That argument is premised on the fact that, at the time of the chemical testing procedures that are challenged in these consolidated actions, the Secretary's regulations on employee drug testing only extended to railway workers subject to the Hours of Service Act. That group of employees constituted about seventy-five percent of railway workers.

Maintenance of way employees occupy positions designated as safety-sensitive by the Secretary of Transportation. That circumstance suggests that the purpose of the Secretary of Transportation's decision not to include maintenance of way employees among those subject to federal drug testing regulations applicable to seventy-five percent of federal railway employees was to allow the employers of these safety-sensitive employees to impose more stringent drug testing requirements than were allowed for other types of employees. The Secretary appears to have had the authority to impose drug testing requirements on maintenance of way employees similar to those imposed by appellants' employer at the time the challenged testing by CNW took place. The Secretary's authority extended to "necessary, appropriate rules, regulations, orders, and standards for all areas of railroad safety." 45 U.S.C.

§ 431(a);[1] *see Railway Labor Executives Ass'n v. Skinner*, 934 F.2d 1096, 1097–98 (9th Cir.1991). A 1991 amendment to 45 U.S.C. § 431, adding present 45 U.S.C. § 431(r), made the Secretary's authority in this area even more explicit.

The fact that the federal policy was less explicit prior to the latter amendment does not, in our view, indicate that there was not an established federal policy on regulation of employee drug testing governing maintenance of way employees. Federal policy may be shaped by either regulation or nonregulation of employer action. Either way the Secretary's election is under Congressional authority.

The foregoing conclusions are not, as appellants suggest, based on a retroactive application of either (a) the enlarged authority granted to the Secretary, or (b) the Secretary's subsequently enacted regulations. Rather, they are based on a discernible federal policy, antedating the challenged drug testing, that employer testing of safety-sensitive railway employees is not to be restricted by local law. There is not, as appellants suggest, a Congressional grant of power to the states in the area in dispute that negates preemption under the doctrines established in *Cipollone v. Liggett Group, Inc.*, 505 U.S. ——, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992), or *Wisconsin Public Intervenor v. Mortier*, 501 U.S. 597, 111 S.Ct. 2476, 115 L.Ed.2d 532 (1991). Appellants' suggestion that the contrary is true is based on language in 45 U.S.C. § 434, which provides that a state may adopt or continue in force any "standard relating to railroad safety" until such time as the Secretary has adopted a rule covering the same subject matter.

The state legislation at issue here is not railroad safety regulation. It is general employee rights legislation in conflict with federal employee drug testing policy. The tendered letter from the Secretary's head counsel, indicating that federal regulations were not intended to affect alcohol and drug testing under state law, appears to speak only to state regulation requiring drug testing of employees and not to state regulation prohibiting such testing. Allowing the several states of the union to apply local law that is inconsistent with the Secretary's election not to restrict employer drug testing would frustrate the intent of Congress that the Secretary's decision is to be controlling. Consequently, we agree with the district court's decision to dismiss appellants' claims.

We conclude that decisions imposing a bar by virtue of "field preemption," as distinguished from "forum preemption," are on the merits rather than involving lack of jurisdiction. The district court did have jurisdiction to consider CNW's defenses to appellants' claims and could properly dismiss those claims on the basis that the substantive laws on which the claims were based are not available to appellants.

Other than finding that the dismissal is technically on the merits rather than jurisdictional, we affirm the judgment of the district court.

**AFFIRMED.**

---

**1.** Section 431(a) also provides that
nothing in this subchapter shall prohibit the bargaining representatives of common carriers and their employees from entering into collective bargaining agreements under the Railway Labor Act, including agreements relating to qualification of employees, which are not inconsistent with rules, regulations, orders or standards prescribed by the Secretary.